## SCAMMON *v.* KIMBALL, ASSIGNEE.

1. A banker, who was a director of an insurance company, can set off against its demand for money it deposited with him, bearing interest and payable on call, the amount due on its policies issued to and held by him.
2. The company having been adjudicated a bankrupt, his right to such a set-off is equally available against its assignee.

APPEAL from the Circuit Court of the United States for the Northern District of Illinois.

The complainant, a private banker in Chicago, held several policies of insurance issued to him by the Mutual Security Insurance Company, of which he was a director.

The company was duly adjudicated a bankrupt. At the time of such adjudication, it had money deposited with him on call, drawing interest, and held his notes for unpaid subscriptions to its capital stock.

The question arising in the case and determined by the court below was, whether the amount due from the company on said policies of insurance on account of losses he had sustained by fire could be set off against said notes, and the money deposited.

In view of the decision in *Sawyer* v. *Hoag, Assignee,* 17 Wall. 610, by this court, the complainant's right to set off his claim against the company, so far as the notes in question are concerned, was abandoned in the argument.

*Mr. Matt. H. Carpenter* for the appellant.

1. The complainant is clearly entitled to the set-off. The Bankrupt Act, sect. 20; *Tucker* v. *Oxley,* 5 Cranch, 34; *Holbrook* v. *Receivers of the American Fire Ins. Co.,* 6 Paige, 220; *Ex parte Globe Fire Ins. Co.,* 2 Edw. Ch. 625; *Gray* v. *Rollo,* 18 Wall. 629; *Drake* v. *Rollo,* 3 Biss. 274; *Olive* v. *Smith,* 5 Taunt. 56; *Young* v. *Bank of Bengal,* 1 Deac. 622; *Jones* v. *Robinson,* 26 Barb. 310; *Berry* v. *Brett,* 6 Bosw. 627; *Bize* v. *Dickason,* 1 T. R. 285; *Ginn* v. *Dubois,* id. 112; *Osgood* v. *De Groot,* 36 N. Y. 348.

2. The deposit of the money with him as banker constituted a loan, and no trust attached to it in his hands. Hill on Trustees, 173; *Patt* v. *Clegg,* 16 M. & W. 321; *Sims* v. *Bond,* 5 B.

& Ad. 389; *Carr* v. *Carr*, 1 Meriv. 541; *Devoyneo* v. *Noble*, id. 568.

*Mr. John L. Thompson, contra.*

The debts are not of the same character, and cannot be set off. *Lawrence* v. *Nelson*, 21 N. Y. 158; *Duncan* v. *Lyon*, 3 Johns. Ch. 358; Waterman on Set-off, 209.

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Jurisdiction is vested in the circuit courts, under the Bankrupt Act, concurrent with the District Court for the same district, of all suits, at law or in equity, which may or shall be brought by any person against the assignee of the bankrupt's estate, touching any property, or rights of property, of the bankrupt transferable to, or vested in, such assignee.

Pursuant to that authority, the appellant, on the 3d of May, 1872, filed the present bill of complaint in the Circuit Court against the appellee as assignee of the bankrupt company described in the title of the case. Prior to that, — to wit, on the 27th of January in the same year, — the insurance company was duly adjudged bankrupt; and the record shows that the present appellee was appointed the assignee of the estate of the bankrupt company.

Satisfactory evidence is exhibited in the record to show that the company was duly organized with a nominal capital of $300,000, of which ten per cent had been paid, and that the residue was secured by the notes of the subscribers. Provision is made by the charter that the stock and affairs of the corporation shall be managed and conducted by any number of directors, not more than twenty-five nor less than nine, to be chosen by ballot from among and by the stockholders. Directors, it is also provided, shall choose out of their number a president and vice-president; and the directors have the power to appoint, for the time being, "such officers, secretaries, agents, and servants as they shall judge necessary."

Shares in the stock of the company, to a large amount, were owned by the complainant; and he admits that the company held notes against him to the amount of $10,147.50, given to secure unpaid balances of subscriptions, for which he was liable either as principal guarantor or surety. Throughout

the lifetime of the company, the complainant insured many and valuable properties in the company, and paid to the proper officers of the same large sums of money as premiums for such policies of insurance. Antecedent to the event which caused the failure of the company, the proper officers of the same transacted a large, and, for the greater portion of the time, a prosperous insurance business.

Much reference to those details will not be made, as they are no longer material in this investigation. Suffice it to say, in that connection, that the complainant was, as he alleges, during the whole of that period, a large owner of real and other property, and was possessed of sufficient means to render secure any moneyed obligation into which he might enter, and to enable him to perform any promise or contract for the payment of money he might make; and he also alleges that it was necessary that the means of the company should be kept where the same could be promptly commanded, if required to pay losses; and in order that the company might accomplish that object, and still realize interest on the same, he came to an agreement with the proper authorities of the company that the funds thereof, or such portion of the same as they might choose, should thereafter, from time to time, be deposited with him, he being then a private banker, and that the moneys so deposited should be paid out or drawn at the pleasure of the company, without notice or limitation; and he avers that he agreed with the company to account with the proper officers for such moneys when and as often as thereto required, and to pay to the company interest thereon, at the rate of ten per centum annually during the continuance of such deposit, until a further or other agreement should be made.

Funds of the kind contemplated were, in accordance with the agreement, deposited with the complainant at the pleasure of the company; and the complainant avers that he paid interest on the average amount of the same, at the agreed rate, for the period and to the amount specified in the exhibit annexed to the bill of complaint.

Ten per centum per annum was paid during the period specified in the annexed exhibit; but it appears that the rate at the close of that period was reduced to eight per cent per annum,

and the complainant admits that no part of the interest since the rate was reduced has been paid.

Both parties, it seems, were solvent until the 9th of October, 1871, when a large part of the property of the complainant and others, which was insured by the company, was destroyed by fire, the immediate effect of which was to cause the failure of the insurance company. Losses of the complainant by the fire, for which the company is responsible, as claimed by the complainant, amount to the sum of $55,800, as appears by the second exhibit annexed to the bill of complaint; and he admits that he held on deposit at the time the company failed the sum of $39,188.03, received under the agreement already fully described, which is due to the company, with eight per cent interest from July 1, 1871, to the 18th of December in the same year.

Process was accordingly issued. The complainant prays that the respondent may be decreed to deliver to him the notes referred to; that he, the respondent, shall acquit and discharge the complainant from the admitted indebtedness to the company; that he, the complainant, be allowed to prove the balance of his demand against the estate of the bankrupt company; and that the respondent be enjoined and restrained from selling or assigning the said notes, and from instituting any suit against the complainant to recover the notes or his indebtedness to the company.

Service was made, and the respondent appeared and filed an answer. He admits that the complainant was one of the original corporators of the company, and subscribers to its capital stock; that only ten per cent of the subscriptions for the capital stock was paid in cash, and that ninety per cent of the same was secured in the promissory notes of the subscribers; that the company at the time of the great fire became insolvent, and that the company on the day named in the bill was adjudged bankrupt; that the company, as alleged, issued several policies of insurance to the complainant, and that he sustained large losses by the great fire; that he is indebted to the company as set forth in the third schedule exhibited in the record, and that he was and is the holder of the funds of the company to the amount specified in the bill of complaint:

but the respondent avers that the company never came to any such agreement, in respect to such funds, as that alleged, and that the complainant held the same solely in his official character as treasurer of the company.

Most of the allegations of the answer were also embodied in a cross-bill filed by the respondent at the same time, in which he denied all the equity of the original bill, and prayed for a decree in his own favor, and that the complainant in the original bill be decreed to pay over to him as assignee the whole amount he owed to the company, including the notes given for subscriptions for stock and the amount he held on deposit.

Proofs were taken; and, the parties having been fully heard, the court dismissed the original bill of complaint, and entered a decree for the respondent in the sum of $9,532, being the amount of the promissory notes given for capital stock, and $39,188.03, being the amount of the funds of the company held by the respondent in the cross-bill, with ten per cent interest on both amounts. Immediate appeal was taken by the complainant in the original bill and respondent in the cross-bill, and he now seeks to reverse that decree.

Complainant's losses by the great fire, it is admitted, amount to $45,015.33, and that the company is liable to him in that amount for such losses under the policies of insurance issued to the complainant prior to the fire.

Since the bill of complaint was filed in this case, this court has decided that the debt due to a stockholder in such a case, for losses sustained by the stockholder, of properties insured by the company, cannot be set off against his indebtedness to the company for unpaid shares in the capital stock of the company, for the reason that moneys arising from that source constitute a trust-fund for the payment of the debts of the company, which, in the due administration of the Bankrupt Law, must be equally divided among all the creditors of the bankrupt. *Sawyer* v. *Hoag*, 17 Wall. 610.

Such an indebtedness constitutes an exception to the rule, that, where there are mutual debts, " one debt may be set against the other," as originally provided by act of Parliament; or perhaps it would be more accurate to say that the rule does not

apply where it appears that the debts are not in the same right as well as mutual.  *United States* v. *Eckford*, 6 Wall. 488.

Whether the suit be one at law or in equity, set-off must be understood as that right which exists between two parties, each of whom, under an independent contract, owes an ascertained amount to the other to set off their respective debts by way of mutual deduction, so that, in any action brought for the larger debt, the residue only, after such deduction, shall be recovered. Adams's Eq., 6th Am. ed., 447.

Courts of equity, following the law, will not allow a set-off of a joint debt against a separate debt, or of a separate debt against a joint debt; nor will such courts allow a set-off of debts accruing in different rights, except under very special circumstances, and where the proofs are clear and the equity is very strong. 2 Story's Eq., 6th ed., sect. 1437.

Equity regards the capital stock and property of a corporation as held in trust for the payment of the debts of the corporation, and recognizes the right of creditors to pursue such properties into whosesoever possession the same may be transferred, unless the stock or property has passed into the hands of a *bona fide* purchaser; and the rule is well settled, that stockholders are not entitled to any share of the capital stock nor to any dividend of the profits until all the debts of the corporation are paid.  *Railroad Co* v. *Howard*, 7 Wall. 416.

Moneys derived from the sale and transfer of the franchises and capital stock of an incorporated company are the assets of the corporation, and, as such, constitute a fund for the payment of its debts; and if held by the corporation itself, and so invested as to be subject to legal process, the fund may be seized by a creditor on such process, and subjected to the payment of the indebtedness of the company.  Where the fund has been improperly distributed among the stockholders, or passed into the hands of third persons not *bona fide* creditors or purchasers, the established rule in equity is, if the debts of the company remain unpaid, that such holders take the fund charged with the trust in favor of the creditors, which a court of equity will enforce, and compel the application of the same to the satis-

faction of the debts of the corporation.    2 Story's Eq., 9th ed., sect. 1252; *Mumma* v. *Potomac*, 8 Pet. 286; *Wood* v. *Dummer*, 3 Mas. 308; *Vose* v. *Grant*, 15 Mass. 522; *Spear* v. *Grant*, 16 id. 14; *Curran* v. *Arkansas*, 15 How. 307.

Tested by these considerations, it is clear that the prayer of the bill of complaint, that the respondent may be directed to deliver to the complainant the notes referred to, must be denied.

Claim for losses due from the company cannot be set off against the notes given for capital stock.  Suppose that is so: still the complainant insists that such claims for losses may be set off against the amount due from him to the company for the moneys of the company deposited with him under the agreement set forth in the bill of complaint.

Matters alleged in the bill of complaint, and denied in the answer, must be proved before such matters can be assumed as true by the court.   Concede that, and it follows that the important question remains to be considered, whether there was such an agreement between the complainant and the company, in respect to the moneys deposited with the complainant, as that set forth in the bill of complaint.

Moneys to a large amount were deposited with the complainant; and it is not denied that he paid interest on the same to the amount of $11,799.96, as shown by the first schedule annexed to the original bill: but the respondent in the original bill, and complainant in the cross-bill, alleges that the complainant in the original bill received and held all such sums as treasurer of the company, and that the balance in his hands is a trust-fund belonging to all creditors, and consequently that his claim for losses under the policies issued to him by the company cannot be set off against his indebtedness to the company for the balance of that fund in his hands.   He admits that he was elected to the office of treasurer by the directors in the month of July, 1870, and that he was reappointed thereto during the following year; but he denies that he ever accepted the office, or that he ever qualified as such, or that he held in his custody any money whatever as treasurer of the company. Subsequently he was examined as a witness in the case, and testified that he never qualified as treasurer or gave bond, and

never had any other or different relations with the company in respect to its funds than such as existed before he was elected.

What he states in respect to the alleged agreement is substantially as follows: That he agreed, at the first meeting of the directors, to receive all moneys paid to the company, and to allow the company ten per cent interest upon it, payable annually, until he should notify the company to the contrary, or a different arrangement should be made between the parties; the purpose of the directors being to have the money at all times available, as far as possible, and at the same time to get interest on it; and he says that he made the offer, not because it was of advantage to him, but to encourage the company.

Sufficient appears to show that the complainant was at that time a private banker in good standing, and of great reputed wealth; and he testifies that the arrangement was continued as long as the company transacted business, except that the rate of interest which he was to allow was reduced from ten to eight per cent per annum. Blank checks to draw the money in his hands were prepared by the officers of the company, and were drawn on him, not as treasurer, but as a private banker; and he testifies that it was never understood at any meeting of the company that there were any funds of the company in his hands as treasurer, and that the funds on hand were always reported as funds in bank, and were so described in the published reports of the company.

Decided confirmation of the material parts of these statements comes from several witnesses; and it appears to the entire satisfaction of the court that the arrangement set forth in the bill of complaint was known to and approved by the stockholders as well as the directors, and by the executive committee and the committee of finance and investment. Deposits undoubtedly may be made with a banker under circumstances where the legal conclusion would be, that the title to the fund deposited remained in the depositor; and in that case the banker would become the bailee of the depositor, and the latter might rightfully demand the identical money deposited as his property: but where the deposit is general, and there is no special agreement proved inconsistent with such a theory, the title to

the money deposited, whatever it may be, passes to the banker, and he becomes liable for the amount as a debt which can only be discharged by a legal payment of the amount. *Thompson* v. *Riggs*, 5 Wall. 678; *Bank* v. *Wister*, 2 Pet. 325.

All deposits made with bankers, said Mr. Justice Miller, may be divided into two classes: namely, those in which the bank becomes bailee of the depositor, the title to the thing deposited remaining with the latter; and that other kind of deposit of money, peculiar to banking business, in which the depositor for his own convenience parts with the title of his money, and loans it to the banker; and the latter, in consideration of the loan of the money and the right to use it for his own profit, agrees to refund the same amount, or any part thereof, on demand. *Marine Bank* v. *Fulton Bank*, 2 Wall. 256.

Such an agreement to refund may be express or implied; and, if it is express, it may be to refund with or without interest, according to the terms of the agreement. Where the agreement is to pay interest, the agreement is obligatory; but the fact that the depositary agreed to pay interest affords very strong evidence that the title to the money deposited passed out of the depositor by the act of making the deposit.

Money deposited with a banker, says Hill, creates a legal debt between the parties, which, under proper circumstances, may be recovered in an action at law. Hill on Trustees, 4th Am. ed., 173.

Authorities to the same effect are numerous and decisive; as, for example, it was expressly decided by the Master of the Rolls that money paid to a banker becomes immediately a part of his general assets, and he is merely a debtor for the amount. *Devaynes* v. *Noble*, 1 Meriv. 561.

Sums which are paid, said Lord Denman, to the credit of a customer with a banker, though usually called deposits, are, in truth, loans by the customer to the banker; and the party who seeks to recover the balance of such an account must prove that the loan was in reality intended to be his, and that it was received as such. *Sims* v. *Bond*, 2 Barn. & Ad. 392.

Exactly the same rule was laid down in the Court of Exchequer, where it was held that money deposited with a banker by his customer, in the ordinary way, is money lent to the

banker, with a superadded obligation that it is to be paid when demanded by a check. *Pott* v. *Clegg*, 16 Mee. & Wels. 327.

Viewed·in the light of these suggestions, it is clear that the amount deposited by the company with the complainant, and which he still owes to the company, or to the respondent as assignee, was and is held by him as a private banker, and not as treasurer of the company ; and that any losses sustained by the complainant,· at the time and in the manner alleged, for which the bankrupt corporation were and are liable as insurers, may be set off against that claim of the bankrupt corporation, as described in the pleadings in the original suit and cross-bill filed by the respondent.

Nothing remains to be done in this investigation except to recapitulate the elements for a decree, and to direct in general terms what the new decree in the case shall be in the court below. Enough is already remarked to show that the complainant is entitled to the relief prayed, so far as respects the claim of the respondent for the balance due to the bankrupt corporation for the moneys deposited with him as a private banker, amounting to the sum of $39,188.03, as appears in the record; and that he should be allowed to prove the balance due to him for the said losses, to the extent that the company is liable therefor, against the estate of the bankrupt corporation; that the complainant is not entitled to the relief prayed, so far as respects the notes referred to in the bill of complaint, for the reason that the notes were given for shares in the capital stock, and constitute a trust-fund which belongs to all the creditors of the company, for which the complainant in the cross-bill is entitled to a decree.

Should further investigation become necessary in order to ascertain the exact amount of the respective claims, that investigation will be made by the Circuit Court.

*Decree reversed, and cause remanded for such further proceedings as may be necessary, and for decree in conformity to the opinion of this court.*

MR. JUSTICE STRONG did not sit during the argument, nor take any part in the decision, of this case.