## DAVIS TRUST CO., OF ELKINS, W. VA., v. SMITH.

(Circuit Court of Appeals, Fourth Circuit.    September 14, 1915.)

No. 1361.

1. BANKS AND BANKING ☞315—SPECIAL DEPOSITS—COMMISSION AS TRUSTEE.
  A trust company, receiving a deposit of $15,000 on the agreement to
  pay semiannual interest at its rate on special deposits, and to pay the
  principal to the depositor's three children when they arrived at 21, held
  it merely as a special deposit, and was not entitled to a commission for
  holding and disbursing the amount; nor was it entitled to a commission
  on a subsequent deposit which it received in trust upon the same terms.

  [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 1219–
  1221; Dec. Dig. ☞315.]

2. BANKS AND BANKING ☞315—TRUST COMPANIES—COLLECTIONS—COMMIS-
  SION—REASONABLE AMOUNT.
  A trust company, receiving 2 bonds, of the par value of $1,000, to col-
  lect the coupons and apply the money according to the conditions of previ-
  ous special deposits, after deducting a reasonable sum for the execution
  of the trust, and subsequently receiving 25 $1,000 bonds on the same con-
  ditions, and collecting on the bonds the sum of $20,000, was entitled to a
  commission of 5 per cent. on the sum collected.

  [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 1219–
  1221; Dec. Dig. ☞315.]

3. BANKS AND BANKING ☞315—TRUST COMPANIES—DEPOSIT OF STOCK—COM-
  MISSION.
  A trust company, receiving stock of a corporation to be held on the same
  conditions as interest-bearing bonds which it had also received and held
  in trust, receiving commission on the interest collected, where the stock
  paid no dividends, was entitled to no commission for merely holding it.

  [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 1219–
  1221; Dec. Dig. ☞315.]

4. COURTS ☞493—UNITED STATES COURTS—JURISDICTION.
  Where the father of plaintiff and the Maryland Trust Company during
  her minority qualified as her guardians in Maryland, and filed in the
  circuit court of West Virginia a petition to remove the funds from that
  state to Maryland and for their custody, from the granting of which pe-
  tition the defendant trust company, holding the funds, appealed to the
  Supreme Court of Appeals of West Virginia pending which the questions
  on such appeal had become moot, and the plaintiff ward became of age,
  plaintiff was entitled to have a personal accounting, and the motion to
  dismiss for want of jurisdiction will be denied.

  [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1346–1352; Dec.
  Dig. ☞493.]

Appeal from the District Court of the United States for the North-
ern District of West Virginia, at Martinsburg; Alston G. Dayton,
Judge.

Action by Samuel K. Smith, curator of the estate of Elise D. Price,
deceased, against the Davis Trust Company, of Elkins, W. Va. Judg-
ment for plaintiff, and defendant appeals. Affirmed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

William MacDonald, of Keyser, W. Va., for appellant.

B. A. Richmond, of Cumberland, Md. (Samuel K. Smith, of Baltimore, Md., Walter C. Capper, of Cumberland, Md., and Clarence E. Martin, of Martinsburg, W. Va., on the brief), for appellee.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

PRITCHARD, Circuit Judge. This suit was instituted by appellee (complainant below) against the Davis Trust Company, of Elkins, W. Va. (defendant below), to recover certain commissions alleged to be due appellee.

[1] The principal question involved in this controversy is as to the compensation to which the appellant is entitled under the agreement by virtue of which certain deposits were made with the appellant from time to time, as appears from the record. It is contended by counsel that appellant acted solely as trustee in the handling of the various amounts herein involved, and that therefore a reasonable sum should be allowed appellant as compensation for the services performed in connection therewith. In view of the contentions of the respective parties, it becomes necessary to consider the material parts of the contract between them at the date of the deposit of the various sums by Col. Davis.

It appears that the appellant is a trust and banking company, engaged, among other things, in loaning money and receiving deposits. It appears that on the 29th day of April, 1902, Col. Davis made a first deposit with the trust company of $15,000, $5,000 of which was for the use of each of three children (of which Elise D. Price was one), until they respectively arrived at the age of 21 years. The deposit was accompanied by a statement which, among other things, contained the following:

"You [the trust company] paying semiannually to their guardians in the meantime interest on each of said deposits at the rate paid or allowed by you on special deposits. * * * To each of said children, upon his or her arriving at the age of 21 years, you shall pay the principal sum of $5,000, with interest which may then be due on the same."

It is earnestly contended by counsel for appellant that it was the intention of Col. Davis, in placing these funds in the hands of the trust company, that it should be reimbursed for holding and disbursing such funds by a commission on the same. We cannot assent to this interpretation of the contract. It is obvious that it was the purpose of Col. Davis to deposit those funds in the trust company, just as other parties deposit funds with a bank, from which they receive interest for the use of the same. It would be unreasonable, as we view the evidence in connection with the contract, to hold otherwise. The principal amount deposited by Col. Davis was treated by the trust company as other deposits, and no doubt used by the bank just as it used funds of a similar character upon which it was paying interest. In other words, when we consider the contract between the parties, we find that this is the ordinary transaction wherein one party deposits money for a stated period with a bank, in consideration of which he is to receive from the bank interest at the rate of 4 per

cent. We fail to find anything in connection with this transaction that tends in the slightest degree to distinguish it from any other deposit made in a bank under similar circumstances.

The next transaction, wherein Col. Davis made a second deposit of $24,000, making in all $39,000 in cash deposited with appellant for the benefit of the three children, was made with the following proviso:

"All of which is to be held by you on special deposit in trust on the conditions and for the purposes following, viz., $13,000 for the use of each of said children until they respectively arrive at the age of 21 years. * * * To each of said children upon his or her arriving at the age of 21 years, you shall pay the principal sum of $13,000, with any interest that may then be due upon the same."

Immediately below this proviso is to be found the following statement with the signature of the trust company attached thereto:

"The deposits named in the foregoing paper are received to be held in trust for the purpose and on the conditions named in said paper."

It is provided as a condition in these various transactions that, whenever one of the children in question should arrive at the age of 21 years, one-third of the amount thus deposited, to wit, $13,000, should be paid to such child. It would be manifestly unjust to hold that, in addition to loaning this money to appellant as a special deposit at the rate of 4 per cent., appellant is entitled to a further compensation of 5 per cent. for handling such funds. It appears that Miss Price, upon arriving at the age of 21, to wit, on the 28th day of January, 1914, made a demand on the trust company through her attorney for the payment of the sum of $13,000. We are of opinion that under this contract she was entitled to receive the same without being required to pay the trust company commissions or otherwise as compensation for the services they had been rendering in connection therewith.

It appears that, instead of paying this amount, appellant only paid her $9,000, leaving due $4,000, which it refused to pay, upon the ground that it had a right to retain such sum as a commission on the amount of money handled, and also as a commission on the par value of the stocks and bonds. The court below refused to allow this sum, and decreed that appellee was entitled to the $4,000 and interest from the date of the said demand until the entry of the decree.

The second assignment of error relates to the sum of $435.46, it being one-third of $1,306.38 coming to these children from the estate of Upton Buxton. These funds were deposited by Col. Davis in the same manner as the other deposits to which we have referred. Under the circumstances, we think the ruling of the court below in treating these funds as being an ordinary deposit was eminently proper.

[2] The next question relates to two items of bonds of the Coal & Coke Railway Company. The par value of these bonds amounted to $1,000 each, and they were placed with the trust company for the use of the children by two separate deposits. The first of these contracts of deposit recognizes the fact that Col. Davis had already deposited with the trust company $39,000 in cash for the use of the

children upon the same conditions contained in his "former written statement," made by him on the 27th day of July, 1902. It also appears that these bonds were deposited to be held upon the conditions contained in the written statement of July 27, 1903,

"except that, instead of your paying at the rate of 4 per cent. interest per annum on the face value of said bonds, you are to cut the coupons from the bonds as they each and severally become due and collect the money for said coupons, and apply the same in all respects as set forth in the written statement of July 27, 1903, after deducting from the money received from the coupons on these bonds a reasonable sum for the execution of this trust."

It was obviously the purpose and intent of the parties to this contract that the *only* compensation the trust company was to receive for the execution of the trust should be a "reasonable sum," and as evidence of this fact it is provided that the corpus of the bonds shall be delivered to the children when they reach their majority. This, in our opinion, fully justifies the lower court in ruling as it did upon this point.

The second deposit of 25 $1,000 bonds was made on December 28, 1905. It was also provided that they were—

"to be held in trust for the said Elise Davis Price, Katherine Davis Price, and Harry B. Price, upon the conditions set forth in the written statement by you July 27, 1903, and March 13, 1905."

This deposit was accepted by the trust company upon the same conditions and terms as the former deposit of bonds. Therefore we are of opinion that for executing the trust the trust company was only entitled to a reasonable compensation, to be paid as hereinbefore stated. It appears that the coupons on the first deposit of bonds were promptly paid semiannually as they fell due, and that the trust company collected the same, amounting to $1,250, for 8½ years; the total amount thus collected being $10,625. It further appears that the coupons on the second deposit of 25 bonds were all collected by the trust company until the 1st of October, 1913, amounting to the sum of $9,375. All told, there was collected from the coupons of the first and second deposit of bonds the sum of $20,000.

The court below held that the trust company was entitled to a commission on this income of 5 per cent. This, we think, is a reasonable compensation for the services performed. At the time demand was made upon the trust company for these bonds by the attorney for Miss Price, 16 of the bonds were delivered, leaving 2 in the hands of the trust company undivided. The court below, among other things, decreed that one-third of the face value of these bonds, to wit, $666.66, be paid to the estate of Miss Price in full of any claim which she had upon coupons maturing April 1 and October 1, 1914.

[3] The next question relates to the capital stock of the Coal & Coke Railway Company that was deposited with the trust company upon the same terms upon which the other securities had been deposited. On February 10, 1908, 800 shares of the preferred stock of the Coal & Coke Railway Company were deposited, on April 18, 1908, 600 shares of the capital stock of said company were deposited, and on October 21, 1911, 312 shares of the preferred stock of this company

were deposited with the trust company, making a total of stock deposited of 1,712 shares. It was likewise provided that these stocks were "to be held by you [the trust company] upon the same conditions that other securities placed by me with you are held." It is admitted that no dividends had been realized upon the same. The face value of these stocks at $100 per share would be $171,200, one-third of which (Miss Price's share) would be $57,066.

It is insisted that the trust company is entitled to five per cent. on the face value of these stocks as compensation for its services rendered in respect to the same. If this contention were correct, then the estate of Miss Price would have to pay the trust company $2,-853.30 for simply holding this stock in the bank at a time when it had practically no value and had never paid a dividend. By the decree of the court below 570 of these shares of stock were given to Miss Price. The trust company, in its statement, charged 5 per cent. on her share of the par value of these stocks, amounting to $2,843.30; 5 per cent. commission upon $16,666, her one-third share of the par value of the bonds, to wit, $833.30; 5 per cent. commission on the principal of $13,000, the balance of cash in bank, and her one-third of the $1,306.38 derived from the estate of Upton Buxton. It was upon this theory that the trust company held the $4,000 balance of the $13,000 deposited in cash, and the one-third of the $1,306.83 coming from the estate of Upton Buxton, to which Miss Price was entitled. If this claim had been allowed, it would have very nearly absorbed the balance of cash in the hands of the trust company. However, the court below refused to grant this allowance.

In this connection it should be borne in mind that, while there was some extra service performed by the trustee in visiting Miss Price in Baltimore, executing leases for her benefit, and for costs and attorney's fees, for which the court allowed $300, one-third of which was charged to the estate of Miss Price, the items for which this allowance was made were not specified; but the court below had the parties before it, heard all the evidence bearing upon this point, and found as a fact that the services were not worth more than $300. We think this amount was ample, in view of what appeared in the record, and that by the decree the parties have obtained substantial justice.

[4] The question of jurisdiction was raised in the court below on motion to dismiss. The court, in disposing of the same, said:

"The motion to dismiss here can only be based upon the fact that the father of plaintiff and a Maryland trust company, during her minority, qualified as guardians for her residing in Maryland, and filed in the circuit court of Mineral county a petition to remove the funds from this state to Maryland and to their custody. The prayer of this petition was granted, and the defendant trust company appealed to the Supreme Court of Appeals of this state from the decree granting such transfer. This appeal remains pending and undetermined. It is apparent that, by reason of the delay in this litigation, all questions arising in it are now necessarily moot ones. The plaintiff ward has become of age, and is clearly entitled to have the accounting for any payment to her personally, regardless of who may have been her guardian or trustee, of her just and proper third part of these funds, bonds, and stocks deposited by Thos. B. Davis with defendant in trust for her, her brother, and sister, to be paid over in third shares to each as they arrive of age. This being so, the motion to dismiss in this case must be overruled."

In view of the foregoing, we think the refusal of the court below to dismiss the case for want of jurisdiction was eminently proper. The trust company had the use of the $39,000 cash deposited for the period mentioned, and were paid a commission of $1,000 for collecting the coupons on the bonds, also a special allowance of $300 for expenses, and by agreement with counsel $300 additional for attorney's fees earned in the case at Martinsburg, which in our opinion was ample compensation for the services rendered.

In view of these facts, and for the reasons stated, we are of opinion that the decree of the court below should be

Affirmed.