**SWAN et al. v. CHILDREN'S HOME SOC. OF WEST VIRGINIA.**

No. 3506.

Circuit Court of Appeals, Fourth Circuit.

Oct. 3, 1933.

Victor H. Shaw, of Fairmont, W. Va., and D. H. Hill Arnold, of Elkins, W. Va., for appellants.

Arthur S. Dayton, of Charleston, W. Va. (Blue, Dayton & Campbell, William F. Blue, and Walton S. Shepherd, Jr., all of Charleston, W. Va., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This suit was instituted by the Children's Home Society, an eleemosynary institution of West Virginia, to establish a trust as against the failed Union National Bank of Fairmont, W. Va., and to secure priority of payment from the assets in the hands of its receiver. The judge below held that the bank, as successor of the People's National Bank of Fairmont, was trustee of a fund which had been deposited with that bank for plaintiff, and that plaintiff's claim on account of this fund was entitled to priority in payment over other creditors of the bank. The case is before us on the appeal of the bank's receiver.

The facts are simple. One Meredith Prickett died in 1920 leaving a will, which, after making certain minor bequests, left the residue of his property to plaintiff under the following provision: "(4) I want the remainder of all my money placed in The Peoples National Bank of Fairmont, Fairmont, West Va. and the interest on the same to be given to the Children Orphan Home at Charleston West Va. or any other place in West Virginia where said home may be located."

A controversy arose involving, among other things, whether the plaintiff here was the beneficiary intended by article 4 of the will, and whether that article carried the residue of the estate, or only the money of which testator died possessed. A suit to secure a construction of the will was brought by the executor in the proper state court, to which both the plaintiff and the People's National Bank were made parties; and in that suit a decree was entered, the provision of which pertinent to this controversy is as follows: "4th. Under clause four of said will it is adjudged, ordered and decreed that the true meaning and intention of said clause was to devise all the rest and residue of the estate of said decedent to the Childrens Home Society of West Virginia, a corporation, and to that end it is adjudged, ordered and decreed that said executor shall convert all of the estate of the said decedent remaining in his hands, after the payment of the aforesaid bequests, and as shown by the appraisement bill filed in this suit, including all of the personal property and real estate owned by the said testator at the time of his death, into money, and that when so converted said executor, after the payment of the above-mentioned bequests, and the costs of administration, and the costs hereinafter decreed, shall place the said money in The Peoples National Bank of Fairmont, Fairmont, West Virginia, at interest, the interest on the same to be given by said bank semiannually to the defendant Childrens Home Society of West Virginia; but said executor shall first pay the costs of administration of said estate and the costs of this suit, and the remainder after the payment of said bequests and costs, he shall so place in said Peoples National Bank of Fairmont, Fairmont, West Virginia, the interest on which is to be paid to said Childrens Home Society of West Virginia as aforesaid. * * * * "

At the time of his death, Prickett was a stockholder in the People's Bank and had certificates of deposit therein aggregating $41,607.81 and a checking account amounting to $1,433.82. The executor, and the administrator d.b.n. c.t.a. who succeeded him, converted the estate into cash and deposited same in the People's Bank. Early in 1925, after the payment of debts and legacies and the cost of administration, there remained on deposit to the credit of the administrator in a general deposit account the sum of $52,096.16. The administrator gave the bank a check

for this amount, taking a receipt which acknowledged that the payment was made in accordance with article four of the will and of the decree of court construing same.

The bank, upon receipt of the check, executed a certificate of deposit in the amount thereof, reciting that the "Peoples National Bank of Fairmont Meredith Prickett Trust Fund Income to Children's Home Society of West Virginia" had deposited that amount in the bank, and agreeing to pay 4 per cent. interest thereon. The bank held this certificate but paid to plaintiff the interest accruing on the deposit every six months so long as the bank remained open. Upon each payment of interest, the existing certificate was canceled and a new one executed. In 1929 plaintiff's president wrote the bank suggesting that the fund ought to be invested in interest-bearing securities which would be identifiable and not liable for obligations or debts of the bank. The bank's attorney replied that the fund had been held in a savings account and interest thereon paid to plaintiff and had not been invested in securities, as suggested in the letter of plaintiff's president, for the reason that the bank felt that under the provisions of the will and the decree of the court it was not permitted to do so but was required to keep the fund in the bank at interest. Later, in July, 1930, the attorney of plaintiff demanded that the bank invest the fund in securities or allow plaintiff to withdraw it so that it might make the investment itself; but the bank refused to make the investment or allow the withdrawal, taking the position that under the will and decree of the court it was not permitted to do either. Nothing further was done about the matter, and the bank closed its doors on December 16, 1930. At that time the cash in the bank amounted to $7,209.42 and balances in correspondent banks to $12,147.42, the latter being traceable to borrowings and clearance of checks of customers. No part of the Meredith Prickett fund has been traced into any specific investment or securities of the bank.

The contention of the plaintiff is that the bank was a trustee of the fund in question; that, if not a trustee under the will of Prickett, it became a trustee ex maleficio upon refusing to permit the withdrawal of the fund; and that because the fund had been commingled by the bank with its general assets, these were impressed with a trust or lien to the amount of the fund which entitled plaintiff to priority of payment from the proceeds of these assets. We think it clear, however, that plaintiff is not entitled to the priority claimed, and this for two reasons: (1) Because the fund was placed in the bank as a general deposit upon which interest was to be paid, and not as a fund which it was to invest for the benefit of plaintiff; and (2) because plaintiff has not traced the fund into any fund or security which has come into the hands of the receiver or shown that any such fund or security has been in any way augmented as a result of the deposit.

■■ It is well settled, of course, that ordinarily a bank holding a trust fund may not mingle same with its general assets but must preserve its identity and invest it for the benefit of the cestui que trust under the same rules that govern other trustees. Strauss v. U. S. F. & G. Co. (C. C. A. 4th) 63 F.(2d) 174. But here the fund was not delivered to the bank to invest or manage; for both the will and the decree interpreting it clearly contemplated that the money was to be placed in the bank at interest. The will was executed at a time when in the opinion of many persons a deposit in a national bank was the safest of all investments; and we think that it was clearly the intention of testator, who was a stockholder in this bank and doubtless had great confidence in it, that the residue of his estate after the payment of specific legacies, should be invested by deposit in the bank and that the interest on the deposit should be paid to the plaintiff. And such was the view of the state court in the order entered by it.

■ It is not necessary to decide whether, upon the deposit being made in accordance with the term of the will, plaintiff became legally entitled thereto with right to withdraw same, or whether the bank was in the position of a trustee authorized to make a deposit in its own banking house. In either case, there was no obligation on the part of the bank to preserve the identity of the fund or to invest it separately from its other assets; but it had the right to commingle the fund with the other assets and make itself a debtor in the ordinary sense. See Scammon v. Kimball, 92 U. S. 362, 370, 23 L. Ed. 483, where the court said: "All deposits made with bankers, said Mr. Justice Miller, may be divided into two classes: namely, those in which the bank becomes bailee of the depositor, the title to the thing deposited remaining with the latter; and that other kind of deposit of money, peculiar to banking business, in which the depositor for his own convenience parts with the title of his money, and loans it to the banker; and the latter, in consideration of the loan of the money and the right to use

it for his own profit, agrees to refund the same amount, or any part thereof, on demand. Marine Bank v. Fulton Bank, 2 Wall. 256 [17 L. Ed. 785]. Such an agreement to refund may be express or implied; and, if it is express, it may be to refund with or without interest, according to the terms of the agreement. Where the agreement is to pay interest, the agreement is obligatory; but the fact that the depositary agreed to pay interest affords very strong evidence that the title to the money deposited passed out of the depositor by the act of making the deposit."

██ If we look only to the will to ascertain the nature of the deposit, it is clear that investment in the form of an ordinary deposit in the bank was directed; and whether the bank was a trustee or not, the investment, being in accordance with the direction of the will, was properly made. 26 R. C. L. 1307; note 132 Am. St. Rep. 372. But we must look also to the decree, for the executor, being in doubt as to his duties under the will, sought the advice of the proper court, making the plaintiff as well as the bank a party to the proceeding; and he was directed to put the money in the bank "at interest," with direction that the interest be paid to plaintiff. There can be no doubt either that the administrator d.b.n. c.t.a. was bound under this order to deposit the fund in question in the bank, at interest, or that the bank when it received the deposit and agreed to pay interest on it, was bound as in the case of an ordinary time deposit. If it had invested the funds in securities and sustained a loss as a result thereof, it would hardly have been heard to urge this loss as a reason for reducing the interest for which it was liable or for abating the amount of the deposit itself. We have a plain case, then, of an ordinary deposit made in a bank under order of court; and it is well settled that in such case no duty devolves upon the bank to keep the deposit separate from its other funds. In case of insolvency, such deposit stands on the same footing as other deposits. Keyes v. Paducah & I. R. Co. (C. C. A. 6th) 61 F.(2d) 611; People v. California Safe Deposit & Trust Co., 168 Cal. 241, 141 P. 1181, L. R. A. 1915A, 299.

In Davis Trust Co. v. Smith (C. C. A. 4th) 226 F. 410, 411, this court dealt with a fund deposited in a bank under an agreement that the bank should pay interest on the deposit to certain children during their minority and should pay the principal sum to them upon their coming of age. There was no question of tracing trust funds in that case, but the nature of the deposit did arise on a claim of the bank to be allowed commissions for the handling of the fund. The denial of this claim was based upon the ground that the deposit was an ordinary deposit, creating a debt on the part of the bank; and what was said by Judge Pritchard, speaking for the court in that case, is applicable here. Said he: "It is obvious that it was the purpose of Col. Davis to deposit those funds in the trust company, just as other parties deposit funds with a bank, from which they receive interest for the use of the same. It would be unreasonable, as we view the evidence in connection with the contract, to hold otherwise. The principal amount deposited by Col. Davis was treated by the trust company as other deposits, and no doubt used by the bank just as it used funds of a similar character upon which it was paying interest. In other words, when we consider the contract between the parties, we find that this is the ordinary transaction wherein one party deposits money for a stated period with a bank, in consideration of which he is to receive from the bank interest at the rate of 4 per cent. We fail to find anything in connection with this transaction that tends in the slightest degree to distinguish it from any other deposit made in a bank under similar circumstances."

██ And the relationship of the bank to the deposit was not changed as a result of the demand made upon it by the attorney of plaintiff. No fund was set aside or investment made in securities for plaintiff as a result of that demand; and consequently no trust fund was created to which any trust could attach. The order of the state court, which was binding upon the parties, directed that the fund be deposited in the bank; and even if it be assumed that the right to the deposit was in plaintiff and that the bank wrongfully refused to pay same over upon demand, this would be a mere breach of contract which would change not at all the character of the deposit. A depositor by demanding his deposit cannot change what is merely a debt of the bank into a fund held in trust for his use and benefit. St. Mary's Church of Potsdam v. National Bank of Potsdam, 23 Misc. 588, 52 N. Y. S. 802.

█ But, even if it be assumed that the bank is to be deemed a trustee of the fund covered by the deposit, plaintiff has not established any right to subject to the trust any of the assets which came into the hands of the receiver. It is conceded that no part of the fund has been traced into any specific investment or securities of the bank. And in addi-

tion to this, it positively appears that no fund which has come into the hands of the receiver could have been augmented as a result of the deposit here in question. As heretofore shown, this deposit was made by the administrator's giving the bank a check on his deposit account. This account was not a trust fund held by the bank, but an ordinary deposit account, evidencing an indebtedness of the bank, which upon insolvency would have stood upon the same basis as other deposits. Thompson v. Orchard State Bank, 76 Colo. 20, 227 P. 827, 37 A. L. R. 115, and note; Gray v. Elliott, 36 Wyo. 361, 255 P. 593, 53 A. L. R. 554, and note. And the check to the bank resulted in a mere shifting of credits and added nothing whatever to its assets. There was consequently no augmentation of assets upon which a trust could be predicated. Lifsey, Receiver of Planters & Merchants First Nat. Bank of South Boston, Va., v. Goodyear Tire & Rubber Co. (C. C. A. 4th) 67 F.(2d) 82 (this day decided); Ellerbe v. Studebaker Corporation of America (C. C. A. 4th) 21 F.(2d) 993, 995; Larabee Mills v. First Nat. Bank (C. C. A. 8th) 13 F.(2d) 330; American Can Co. v. Williams (C. C. A. 2d) 178 F. 420; Mechanics & Metals Nat. Bank v. Buchanan (C. C. A. 8th) 12 F.(2d) 891. And see note in 82 A. L. R. at pages 95 and 101, and cases there cited.

It is the contention of plaintiff that where a trust relationship is established, no augmentation or tracing need be shown, but that because of the relationship the cestui que trust is given preferential status in the distribution of assets in the hands of the receiver. We do not conceive this to be the law. The policy of the national banking act is to secure equality of treatment to the creditors of an insolvent bank; and there is no such thing as a preferred claim under the statute. 12 USCA § 194. Those entitled to trust funds held by the bank may enforce the trust against the receiver, not on the ground that the law gives them a preferred status, but that the receiver has property which in equity and good conscience belongs to them. But, unless they can trace the trust funds into some fund or specific property which has come into his hands, or can show that the assets in his hands have been directly augmented as a result of the conversion of the trust funds by the bank, they have no basis upon which relief can be granted them. We have gone into this question in a number of recent cases, one of the latest being Harmer v. Rendleman (C. C. A. 4th) 64 F.(2d) 422, 423, in which, after adverting to the liberalization of the rule of

tracing trust funds by Knatchbull v. Hallett, 13 Ch. Div. 696 and Central Nat. Bank v. Connecticut Mut. Life Ins. Co., 104 U. S. 54, 26 L. Ed. 693, we laid down with citation of controlling authority the limitation upon the rule which is applicable here, as follows: "But there is a limitation upon this modern rule as well settled as the rule itself, viz., that it is not sufficient to prove merely that the trust property has gone into the general estate and has presumably increased its amount and value. It is indispensable that clear proof be made that the trust property or its proceeds has gone into a specific fund, or into a specific identified piece of property, or has directly augmented a fund upon which the trust is to be declared. When it is sought to impress funds in the hands of a receiver with a trust on account of the wrongful conversion of trust property by an individual or corporation to whose rights he has succeeded, it must be shown that the funds in his hands have been directly augmented by the presence of the trust property or its proceeds, so that a court of equity can see with certainty that the trust property is in his hands. Peters v. Bain, 133 U. S. 670, 693, 694, 10 S. Ct. 354, 33 L. Ed. 696; First National Bank of Ventura v. Williams (D. C.) 15 F.(2d) 585; Marshburn v. Williams (D. C.) 15 F.(2d) 589; Smith Reduction Corporation v. Williams (D. C.) 15 F. (2d) 874; Schumacher v. Harriett (C. C. A. 4th) 52 F.(2d) 817, 818, 819, 82 A. L. R. 1; Ellerbe v. Studebaker Corporation of America (C. C. A. 4th) 21 F.(2d) 993; Frelinghuysen v. Nugent (C. C.) 36 F. 229, 239; City Bank of Hopkinsville v. Blackmore (C. C. A. 6th) 75 F. 771; Richardson v. New Orleans Debenture Redemption Co. (C. C. A. 5th) 102 F. 780, 52 L. R. A. 67; American Can Co. v. Williams (C. C. A. 2d) 178 F. 420; Empire State Surety Co. v. Carroll County (C. C. A. 8th) 194 F. 593, 604; Farmers' Nat. Bank v. Pribble (C. C. A. 8th) 15 F.(2d) 175, 176; Dudley v. Richards (C. C. A. 8th) 18 F.(2d) 876. And see exhaustive note in 82 A. L. R. 46, 52, 71, 73, and cases there cited."

We can think of no nobler charity, nor of one making a stronger appeal to the human heart, than that of the plaintiff here, engaged as it is in providing for orphan and homeless children; and it is most unfortunate that funds intended for its use should have been lost. We have no option, however, but to declare the law as we find it. For the reasons stated, we think that plaintiff has failed to establish any right to preferential payment

from the funds in the hands of the receiver; and the decree appealed from will accordingly be reversed.

Reversed.