SANTEE TIMBER CORPORATION v. ELLIOTT et al.

KRUPNICK v. PEOPLE'S STATE BANK OF SOUTH CAROLINA et al.

No. 3564.

Circuit Court of Appeals, Fourth Circuit.

April 3, 1934.

180

Henry E. Davis, of Florence, S. C., and L. D. Lide, of Marion, S. C., for appellant.

Edward W. Mullins and William M. Shand, both of Columbia, S. C. (Nelson & Mullins and Bènet, Shand & McGowan, all of Columbia, S. C., on the brief), for appellees.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal from a decree on an intervening petition in the receivership proceedings of the failed People's State Bank of South Carolina. The petitioner was the Santee Timber Corporation, which sought to impress a trust on assets in the hands of the receivers on account of deposits made with the bank in the latter part of the year 1931 amounting to $43,532.31. These deposits were made pursuant to contracts between the timber corporation, as seller of certain timber, the purchaser of the timber, and the Mercantile Trust Company of Baltimore, the trustee under a deed of trust securing an issue of bonds. They were subject only to the check or order of the trust company. The timber corporation, which had assumed responsibility for the depository, had made payment to the trust company of the amount of the deposits, and all rights of the trust company therein had been assigned to it. The decree adjudged that the claim based on the deposits was without preferential status and dismissed the petition. The timber corporation has appealed.

The material facts are undisputed. In 1928 the timber corporation entered into a contract for the sale of standing timber to the Turner-Farber-Love Company, which assigned its rights under the contract to the Santee Hardwood Company. This contract provided that the purchaser should cut the timber on a certain tract of land and pay for same at agreed prices, the basic price being $7 per thousand feet, and should make payment on the 15th day of each month for all lumber shipped during the preceding month. Payment was to be made by depositing the amount due to the credit of the timber corporation in the People's First National Bank of Charleston, S. C., the predecessor of the failed bank, or in such other bank or banks as might be designated by the timber corporation, that corporation "assuming all responsibility for the solvency of the depository." The contract provided also that at the time of each monthly payment the purchaser should file with the timber corporation and with the "depository bank" an itemized statement of the lumber shipped during the preceding month.

Shortly after the making of this contract, the timber corporation executed a deed of trust to the Mercantile Trust & Deposit Company of Baltimore, the name of which has since been changed to Mercantile Trust Company, conveying certain property to that company as trustee and assigning to it the

rights of the timber corporation under its contract with the Turner-Farber-Love Company. One of the provisions of the deed of trust was that there should be paid to the trust company semiannually by the bank, acting as depository under the contract heretofore mentioned, "all moneys received by such depository" from the hardwood company to the extent of $6 per thousand feet, and that to this extent the amounts deposited to the credit of the timber corporation should be "subject only to the check or order of the Trustee." So long as there was no default on the part of the timber corporation, it was authorized to receive from the depository monthly, for its own use and benefit, the remainder of the moneys received by the depository from the hardwood company. Under the deed of trust, as well as under the contract, full responsibility for the depository was assumed by the timber corporation.

The hardwood company carried its general deposit account with the bank. Once each month it drew a check on this account for the amount due under its contract with the timber corporation, and this check, together with a copy of the itemized monthly statement provided for in the contract of sale, was sent to one K. E. Bristol, vice president and trust officer of the bank. The check was charged to the account of the hardwood company; and so much as was required to meet the conditions of the deed of trust was credited to the "Santee Corporation Sales Agreement Account," an account carried in the savings department of the bank, and the remainder was credited to the general commercial account of the timber corporation. Every six months the amount accumulated in this "Sales Agreement Account," with interest thereon, was remitted to the trust company and no compensation was paid to or retained by the bank on account of services rendered as trustee or otherwise. While the account was handled by its trust officer, there was no attempt to segregate or separately invest the funds deposited with it; and there is nothing to show that such segregation or separate investment was contemplated. On July 6, 1931, the bank remitted to the trust company in full for the amounts deposited to that date. The amount here involved represents deposits in the "Sales Agreement Account" made in the manner above described between July 1, 1931, and December 31, 1931, with interest on such deposits calculated to the latter date. The bank was placed in receivership January 2, 1932.

There can be no question, we think, but that a trust in favor of the trust company was created under the contract and deed of trust with respect to the debt of the bank created by the deposits made pursuant to their provisions; and if the timber corporation, relying upon the fact that the deposits were made in the "Timber Sales Account" carried in its name, were claiming the credit balance as its own and denying the right of the trust company, a trust in favor of the latter would unquestionably be declared. Stickney v. General Electric Co. (C. C. A. 4th) 44 F.(2d) 362. But to say that a trust exists with respect to a debt created by a deposit made pursuant to an agreement of parties does not mean that the bank takes the funds deposited as trustee and is charged with the duty of keeping them separate from its other funds and investing them as trust funds intrusted to its keeping. Complainant confuses a trust with respect to the debt evidenced by a deposit account with a trust in funds held by a bank as trustee, which is an entirely different matter. A general deposit in a bank creates merely a debt on the part of the bank. The funds thus deposited become the property of the bank; and it is under no obligation to the depositor to preserve them, to invest them, or to keep them separate from its other funds. Funds which are the subject of a trust may be thus deposited in a bank under a general deposit; and the obligation of the bank to repay the deposit may thus become the subject of the trust just as a bond, promissory note, or other obligation. But it is well settled that the bank does not become charged with the duties of a trustee merely because it accepts on deposit funds which are subject to a trust. 3 R. C. L. 518; 7 C. J. 633; notes in 37 A. L. R. 120 and 53 A. L. R. 564. It becomes charged with such duties when it accepts funds, not as a general deposit creating the relationship of debtor and creditor, but under an agreement to handle and account for them in a fiduciary capacity, as in Strauss v. U. S. F. & G. Co. (C. C. A. 4th) 63 F. (2d) 174, or under circumstances giving rise to a constructive trust, as in Tucker v. Newcomb (C. C. A. 4th) 67 F.(2d) 177.

What we have here is nothing more than a series of general deposits made with the bank as a depository pursuant to agreement of the parties to whom the funds belonged and under an agreement that the bank should remit at regular intervals to the party entitled. The fact that the bank was paid nothing for services as trustee but, on the contrary, paid interest on the deposits made with

it, shows that the parties thoroughly understood that it was to use the funds deposited as its own, assuming the position of debtor as in the case of other general deposits, and was not to be charged as a trustee with the duty of segregating and investing the funds. Swan v. Children's Home Society of West Virginia (C. C. A. 4th) 67 F.(2d) 84; Davis Trust Co. v. Smith (C. C. A. 4th) 226 F. 410; Scammon v. Kimball, 92 U. S. 362, 370, 23 L. Ed. 483. And this is not affected by the fact that it was charged with the duty of dividing the deposit made by the hardwood company between the trust company and the timber corporation, as it is perfectly clear that an ordinary general deposit of the funds held for remittance to the trust company was contemplated and not a segregation or investment of funds for its benefit. Swan v. Children's Home Society, supra, 67 F.(2d) at page 87. The case is like that presented in Commercial Bank v. Armstrong (Armstrong v. Commercial Bank), 148 U. S. 50, 13 S. Ct. 533, 535, 37 L. Ed. 363, where it was held that no trust arose with respect to collections made by one bank for another under an agreement that remittance for such collections was to be made at stated intervals. The court said:

"The agreement was to collect at par, and remit the 1st, 11th, and 21st of each month. Collections intermediate those dates were, by the custom of banks, and the evident understanding of the parties, to be mingled with the general funds of the Fidelity, and used in its business. The fact that the intervals between the dates for remitting were brief is immaterial. The principle is the same as if the Fidelity was to remit only once every six months. It was the contemplation of the parties, and must be so adjudged according to the ordinary custom of banking, that these collections were not to be placed on special deposit and held until the day for remitting. The very fact that collections were to be made at par shows that the compensation for the trouble and expense of collection was understood to be the temporary deposit of the funds thus collected, and the temporary use thereof by the Fidelity."

Another decision by the Supreme Court very much in point is Marine Bank v. Fulton Bank, 2 Wall. 252, 256, 17 L. Ed. 785, where the Marine Bank made collections for the Fulton Bank and was advised by the latter to hold the avails subject to order and advise the amount collected. Afterwards the Marine Bank attempted to make payment in the currency which it had received on the collection, then largely depreciated, but its right to do this was denied, the court saying:

"All deposits made with bankers may be divided into two classes, namely, those in which the bank becomes bailee of the depositor, the title to the thing deposited remaining with the latter; and that other kind of deposit of money peculiar to banking business, in which the depositor, for his own convenience, parts with the title to his money, and loans it to the bankers; and the latter, in consideration of the loan of the money and the right to use it for his own profit, agrees to refund the same amount, or any part thereof, on demand. The case before us is not of the former class. It must be of the latter."

There is some conflict among the state decisions as to whether a deposit made in a bank for a special purpose creates a trust fund in the hands of the bank. But it is well settled in the federal courts that, if the deposit is made as a general deposit, the fact that it is made for the purpose of providing a credit which is to be used thereafter for a special purpose does not give it the status of a trust fund in the hands of the bank. Thus, in Blakey v. Brinson, 286 U. S. 254, 52 S. Ct. 516, 76 L. Ed. 1089, 82 A. L. R. 1288, it was held that a deposit made for the purpose of providing a credit against which bonds to be purchased by the bank for the depositor were to be charged, did not give rise to a trust in favor of the depositor. In Manhattan Co. v. Blake, 148 U. S. 412, 425, 13 S. Ct. 640, 644, 37 L. Ed. 504, a deposit by a state with a bank which acted as agent in paying interest on its obligations was held not to establish a trust but a deposit account subject to the tax on bank deposits. In Kershaw v. Kimble (C. C. A. 10th) 65 F.(2d) 553, a deposit in a savings account to be charged with purchases of securities to be made by the bank was held not to create a trust. And the same conclusion was reached in Keyes v. Paducah & I. R. Co. (C. C. A. 6th) 61 F.(2d) 611, 86 A. L. R. 203, where there was a deposit of funds in a bank pending the final determination of a lawsuit; in Great Atlantic & Pacific Tea Co. v. Citizens' Nat. Bank (C. C. A. 3d) 66 F.(2d) 883, where deposits were made with a bank which was to make daily transmission to another bank of accumulated deposits; in Pitts v. Pease (C. C. A. 5th) 39 F.(2d) 14, where deposits were made for the purpose of paying certain notes; in Northern Sugar Corporation v. Thompson (C. C. A. 8th) 13 F.(2d) 829, where deposits were made to meet a

pay roll; in Davis Trust Co. v. Smith, supra (C. C. A. 4th) 226 F. 410, where funds were deposited in a bank under an agreement that interest on the deposit was to be paid to certain children during their minority and that the principal sum was to be paid to them on their coming of age; and in the recent case of Swan v. Children's Home Society of West Virginia, supra, 67 F.(2d) 84, where a deposit was made in a bank at interest, pursuant to the terms of a will and an order of a probate court, with direction that the interest on the deposit be paid to a society for the care of orphan children. The holding of the South Carolina courts is to the same effect. See Fant v. Home Bank & Trust Co., 152 S. C. 140, 149 S. E. 599.

■ In Manhattan Co. v. Blake, supra, the Supreme Court used language which is very appropriate here. In that case the bank agreed to act as agent of the state in paying from the deposits made with it interest on certain state obligations. The court said: "The plaintiff occupied two relations to the state, one that of debtor as a bank for the money deposited with it by the state, and the other that of agent of the state to pay out from the money deposited, if it remained on deposit, money for certain specified purposes." Here the bank was the debtor of the timber corporation for the amount of the deposits made with it under the contract and was the agent of that corporation to make payment to the trust company of the amounts due it under the provisions of the deed of trust and charge such payments to the deposit account. The fact that the funds credited to the "Sales Agreement Account" were subject to the order of the trust company and not of the timber corporation does not, of course, change the situation. Even if there had been provision that they were not to be withdrawn except in the semiannual remittances, this would have had no effect other than give them the status of time deposits. The controlling factor is that there is nothing in the contract, in the deed of trust, or in the dealings of the parties which shows that it was ever contemplated that the deposits were to be set apart as trust funds and handled and invested as such. On the contrary, the intention is clear that the deposit was to be a general deposit; and, if the bank had segregated and invested the funds, a tender of the securities in which they had been invested would not have been a compliance with the duty to make semiannual remittances. If it had sustained losses as a result of such investments, any attempt to deduct such losses from the remittances would have been properly resisted under the holding of the Supreme Court in Marine Bank v. Fulton Bank, supra.

■ Nor do we think that the timber corporation's position is helped by the South Carolina statute upon which it relies, the Act of March 28, 1930 (36 St. at Large S. C. p. 1367). That statute requires banks acting in a fiduciary capacity to segregate trust funds from their general assets and invest them, and provides that funds held awaiting investment or distribution shall be secured to the trust department of the bank by bond acceptable for the securing of public funds under the law of the state. It applies only to cases where banks accept funds to invest or manage in a fiduciary capacity, and has no application whatever to a general deposit which creates a mere indebtedness on the part of the bank.

■ Because of the importance of the question involved, we have gone somewhat fully into the question as to the existence of a trust; but, even if the bank were held a trustee of the fund covered by the deposits, complainant has not established any right to subject to the trust any of the assets which came into the hands of the receivers. As heretofore stated, the deposits in question were made by crediting to the "Sales Agreement Account" checks drawn by the hardwood company against its general account in the bank. This resulted in a mere shifting of credits and added nothing to the bank's assets. There was consequently no augmentation of assets upon which a trust in favor of complainant could be predicated. Swan v. Children's Home Society of West Virginia, supra; Lifsey, Receiver of Planters' & Merchants' First National Bank of South Boston, Va., v. Goodyear Tire & Rubber Co. (C. C. A. 4th) 67 F.(2d) 82; Ellerbe v. Studebaker Corporation of America (C. C. A. 4th) 21 F.(2d) 993, 995; Larabee Mills v. First Nat. Bank (C. C. A. 8th) 13 F.(2d) 330; American Can Co. v. Williams (C. C. A. 2d) 178 F. 420; Mechanics & Metals Nat. Bank v. Buchanan (C. C. A. 8th) 12 F.(2d) 891. And see note in 82 A. L. R. at pages 95 and 101, and cases there cited.

For the reasons stated, the decree appealed from was correct and same will accordingly be affirmed.

Affirmed.