## SCHULENBERG v. NORTON.
### No. 8876.

Circuit Court of Appeals, Eighth Circuit.
April 6, 1931.

Rehearing Denied May 4, 1931.

John Knauf and Arthur L. Knauf, both of Jamestown, N. D., for appellant.

Lemke & Weaver, of Fargo, N. D., for appellee.

Before STONE and GARDNER, Circuit Judges, and WYMAN, District Judge.

STONE, Circuit Judge.

This is an action by the administrator of Anna Smith against the receiver of the Farmers' National Bank of La Moure, N. D. The substance of the petition is that Mrs. Smith had intrusted $1,700 to the bank to be invested in 7 per cent. real estate mortgages; that the bank had failed to make such investment, but had converted the funds to its own use; that, at the time the bank became insolvent and was taken over by the comptroller, there were funds therein of more than the above amount; that the receiver had, "on various occasions," been requested to and had refused to allow this amount as a preferred claim or any claim against the bank; that this amount should be paid as a preferred claim from the assets. Subsequently, the prayer was amended to permit allowance as a general claim if the court deemed it was not preferential. The answer denied the petition, except as to appointment and qualification of the receiver, and it pleaded that the petition failed to state a cause of action. Evidence was introduced, and the court decreed that $1,700 be allowed and paid as a general claim. From this decree, the receiver appeals.

There are two general contentions here. One is that the amendment to the petition was improperly permitted. The other is that the evidence was insufficient to sustain the decree.

■ The objections urged here to the amendment to the prayer of the petition are that it was not to conform to the proof, and that it came too late. Amendments to pleadings are freely allowed where they are in furtherance of justice. The propriety of such amendments is a matter of discretion with the trial court, and will not be disturbed, unless it appears that such discretion has been unwisely exercised, in that the amendment allowed was not, under the circumstances, in furtherance of justice but a detriment thereto. USCA title 28, § 777; Thomsen v. Cayser, 243 U. S. 66, 89, 37 S. Ct. 353, 61 L. Ed. 597, Ann. Cas. 1917D, 322; and the following cases in this court—Guardian Trust Co. v. Meyer, 19 F.(2d) 186, 192; Chicago, St. P., M. & O. Ry. Co. v. Nelson, 226 F. 708, 712; Bankers' Surety Co. v. Town of Holly, 219 F. 96, 102. This amendment came some time after the submission of the case, but before decision. It was not intended to affect the issues in the case but the relief. There is no contention that it could have resulted in placing appellant in any disadvantageous position by surprise or otherwise. In a sense, it was to conform to the proof, as it was designed to permit plaintiff to secure alternative relief based thereon. There was no prejudice to appellant of which he can complain. It was not an unwise exercise of discretion to permit the amendment.

■ The contention that the amendment "came too late" is based upon the theory that the court had lost the power to permit amendment, because, it is claimed, the term at which the case was tried and submitted had closed before the amendment was offered. While the case had been tried and submitted, it was still under such submission and undetermined when the amendment was allowed. Section 777 of title 28, USCA provides that the trial court "may at any time permit either of the parties to amend any defect in the * * * pleadings, upon such conditions as it shall, in its discretion and by its rules, prescribe." "Any time" in the above statute has been construed to mean while the court "had control of the record, it had jurisdiction to act." Mexican Central Ry. Co. v. Duthie, 189 U. S. 76, 77, 23 S. Ct. 610, 47 L. Ed. 715. It not only "covers every step of a case from summons to judgment" [In re Griggs, 233 F. 243, 246 (C. C. A. 8)], but amendments may be made even after judgment [Norton v. Larney, 266 U. S. 511, 516, 45 S. Ct. 145, 69 L. Ed. 413; Ward v. Morrow, 15 F.(2d) 660, 662, 663 (C. C. A. 8); McDonald v. Nebraska, 101 F. 171, 177 (C. C. A. 8); Chicago, R. I. & P. Ry. Co. v. Stephens, 218 F. 535, 540 (C. C. A. 6)]. There is some dispute as to whether this amendment was made during the term, but that is immaterial, where no final judgment has been entered during the expired term, for the matter is yet within the bosom of the court for decision, and it has lost no control over the incidents of the trial. In fact, such an amendment may be regarded as made in the appellate court [Norton v. Larney, 266 U. S. 511, 516, 45 S. Ct. 145, 69 L. Ed. 413], or the appellate court may remand with instructions to set aside the judgment but not the verdict, to permit the amendment, and to re-enter judgment thereafter [Ward v. Morrow, 15 F.(2d) 660, 662, 663 (C. C. A. 8)]. It is claimed, also, that the amendment constituted a new cause of action. This cannot be, because the amendment made no change in the facts relied upon for recovery, but merely as the remedy or result of such facts. There was no abuse of discretion in allowing this amendment; no statement of a different cause of action; and

it was not out of time in a jurisdictional sense.

■■ The next contention is that no general claim was ever presented to the receiver and that the claim alleging preference was not filed within time. The theory of this contention is that presentation of a claim to the receiver is a necessary prerequisite to suit thereon. No authority is cited to support this proposition, and we have been unable to find such. Section 194, Title 12, USCA, requires the receiver to ratably pay "all such claims as may have been proved to his satisfaction or adjudicated in a court of competent jurisdiction." The Supreme Court has held that claims may be established in court as well as before the receiver. Bank of Bethel v. Pahquioque Bank, 14 Wall. (81 U. S.) 383, 401, 20 L. Ed. 840; Kennedy v. Gibson, 8 Wall. 498, 506, 19 L. Ed. 476. There is no statutory provision requiring prior presentation of claims to such receiver. The statute provides an easy, speedy manner of determination of claims by permitting such to be presented to a receiver appointed by the Comptroller, but this is quite different from limiting the ordinary and usual way of determining rights of creditors judicially. Nor is it material that this claim was, at first, urged as a preferred claim, since no ground of estoppel is or can be based thereon under the facts here.

■ On the merits, the claim is that there was no liability shown. There is no essential controversy in the evidence as to the transaction between Mrs. Smith and the bank. Prior to June 3, 1915, Mrs. Smith had approximately $1,700 in the bank, represented by a certificate of deposit bearing 5 per cent. interest. At that date, she had a conversation with Hunt, cashier of the bank, to the effect that she wanted to cash the certificate in order to invest the funds to procure higher interest. Hunt told her the bank could not pay more than 5 per cent., but that he could invest the funds for her to secure 7 per cent. to which she consented. Thereupon and on that day the certificate was cashed, and Hunt testified that he "went through the note pouch and took out I think three or four good notes that I figured were absolutely good notes and put them in an envelope and marked on the envelope 'property of Mrs. Smith' and just put them in that envelope and put them in the vault and that was the start of it, and as those notes were paid I took other notes out of the bank and put in the place of them and she received her —maybe you don't want me to answer that, it

is hard to—that continued until the bank closed."

These notes had been among the "bills receivable" on the books of the bank, and, when they were taken out and placed in the envelope for Mrs. Smith, her name was written at the end of the lines on the book where these notes were entered. This book contained only notes which were paid. Some months later (March 3, 1916), when Mrs. Smith was leaving La Moure, the cashier gave her evidence of the transaction in the form of a receipt as follows:

"La Moure, N. D. Mch. 3, 1916.

"Received of Mrs. Anna Smith Seventeen Hundred and no/Dollars. This money left with bank for investment purposes and she is to receive interest at 7% from Dec. 23, 1915.

"$1,700.00

"Farmers Natl. Bank of La Moure,
"T. S. Hunt, Cash."

Mrs. Smith had no knowledge of what notes the money was from time to time invested in. She knew only that the money was being invested so as to get her 7 per cent. interest which was sent to her annually. Sometimes notes in Mrs. Smith's envelope were paid and other notes placed therein, while sometimes notes were taken out and returned to the bank and other notes substituted therefor. This procedure continued until May 3, 1921, when there were placed in the envelope the last three notes. Before the bank closed, Hunt took these notes out and placed them in his personal letter file and took them from the bank, and still has possession of them. These last notes were separately by Peter C. Peterson ($700), A. P. Smith ($630.37), and Fred Long ($373.65). At the time the Smith and the Long notes were taken, those men were already indebted to the bank and unable to meet the principal or interest on such indebtedness, and had reached the legal limit of loans to them, "so I [Hunt] tried to find outside money so we could keep them going and get all the money." To accomplish this result, their notes were placed in Mrs. Smith's envelope. The Peterson note was secured by a second mortgage. Before the bank closed, the Peterson note was taken out of Mrs. Smith's envelope because of foreclosure of the first mortgage. Also, before that time, the Smith note was taken out of Mrs. Smith's envelope and placed in the bank files of "collateral notes." All of these three notes are worthless.

While the evidence might, in some respects, be more complete and clear, it compels the following conclusions: The bank took this money to invest for Mrs. Smith. Through its cashier, it made these investments in various successive notes taken from its own loans which it segregated to Mrs. Smith. At least part of the time and as to most of the notes it made substitutions to its own pleasure and interests. The last notes so placed to Mrs. Smith were, to the ·knowledge of the cashier, worthless, or, at least, of very doubtful value, and were so placed (the Smith and Long notes) for its own interests solely. Upon such conclusions as to the facts, what must be the result?

Appellant contends that there is no liability on the part of the bank because there was no deposit by Mrs. Smith in the bank when it closed; because there is no allegation of fraud, and the investments were in the character of securities intended; and because the bank could not, under the statute, guarantee the worth of real estate loans.

While the petition alleges that the bank took this money under an arrangement to invest it in first mortgage real estate loans, it is not material that this method of investment was not shown. What the evidence does show is simply that the money was taken by the bank "for investment purposes" to yield 7 per cent. interest. No question of liability as for a deposit, in the ordinary sense, is here involved. The relation was for years after June 3, 1915, not of bank and depositor, but of agent and principal. Nor is the theory of guarantee applicable because the allegation of the petition is that the bank had not invested the money as it should have, but had "converted" it to its own use. True it is that there is no direct allegation of fraud, but the petition clearly intends that the bank, instead of using the money as it was in duty bound, used it for its own purposes.

The bank was intrusted with this money under an obligation to use good faith in the investment thereof. It has gained the use for itself; it has not used good faith; and, because it has not, this loss has occurred. In all good conscience the bank should respond for this loss through its failure to use good faith in handling money intrusted to it. The situation is, or is analogous to, that where recovery is accorded for money had and received. The law does not permit those who deal with money intrusted to them to profit through bad faith action in relations thereto.

The judgment is right, and is affirmed.