### POOLE v. ELLIOTT et al.
#### No. 3824.

Circuit Court of Appeals, Fourth Circuit.

Argued Feb. 6, 1935.

Decided April 4, 1935.

A. F. Woods, of Marion, S. C. (L. D. Lide, of Marion, S. C., on the brief), for appellant.

W. C. McGowan and E. W. Mullins, both of Columbia, S. C. (Nelson & Mullins and Benet, Shand & McGowan, all of Columbia, S. C., on the brief), for appellees.

George L. Buist, of Charleston, S. C., as amicus curiæ.

Before PARKER and SOPER, Circuit Judges, and HAYES, District Judge.

PARKER, Circuit Judge.

On January 2, 1932, the People's State Bank of South Carolina suspended business; and on the 27th day of the same month receivers were appointed by the court below and placed in charge of its affairs. The bank had forty-three branches located in various towns and cities of the state of South Carolina, one of them being in the city of Florence. On December 14, 1931, this Florence branch opened an office in the town of Mullins, which was without banking facilities due to the closing of the banks therein two days before. At this office deposits were received on behalf of the Florence branch; but all business done at this office was entered upon the books of the Florence branch and treated and considered as business done by that branch. When the bank closed on January 2d, there was cash on hand in the Mullins office amounting to ap-

proximately $2,200 and this was eventually delivered to the receivers.

The petitioner, W. G. Poole, was a depositor, making deposits at the Mullins office of the Florence branch of the bank. Between December 14, 1931, and the closing of the bank, he deposited a total of $1,201.94 against which he drew checks, which were paid, amounting to $612.42, leaving a balance to his credit when the bank failed of $589.52. On June 22, 1933, he filed a petition with the court below asking that his claim be established as a preferred claim against the general assets of the bank on two grounds: (1) That the bank had established a branch bank at Mullins without lawful authority; and (2) that, at the time the deposits in question were made, the bank was hopelessly and irretrievably insolvent to the knowledge of its officers and directors.

The case was referred to a special master, who found that no branch bank had been opened at Mullins, but that the office there was maintained, not as a branch bank, but as an agency of the Florence branch for the convenience of its depositors living in Mullins. He found, however, that the bank was hopelessly and irretrievably insolvent at the time the deposits were made and recommended that petitioner be granted the status of a preferred creditor with respect to his deposit balance. The district judge sustained the finding as to the status of the Mullins office, but reversed the finding as to the hopeless and irretrievable insolvency of the bank, holding that, up until the time of its closing, its officers and directors hoped and expected it to be rehabilitated and to continue in business. He thereupon entered an order denying preferential status to the claim of petitioner, and petitioner has appealed.

We deem it unnecessary to pass upon either of the questions raised by the petition and argued with so much earnestness by counsel. Whether the Mullins office is to be considered as a branch bank within the meaning of the South Carolina statute or a mere additional office of a branch maintained for the convenience of depositors, we know of nothing in the banking law of South Carolina, or elsewhere, which would give to deposits made therein a status in anywise different from other deposits of the bank. Even if it be regarded as a branch bank operated without legal authority, we can think of no reason why deposits in such a branch should be given preferred status

over other debts of the bank. The fact that the operation of a branch may not be authorized does not change the nature of the contract with the depositor therein; and even if the depositor were justified because of this fact in repudiating his deposit and reclaiming the funds deposited, there is nothing here tracing any of the funds deposited by petitioner into the hands of the receivers or showing that the assets which came into their possession were in anywise augmented as a result thereof.

And, even if the bank were hopelessly and irretrievably insolvent at the time of the receipt of the deposits, this fact would not give preferential status to the claim of the depositor. It is true that the acceptance of a deposit under such circumstances is a fraud on the depositor, for which he may rescind the contract and recover the deposit or ask that a constructive trust be declared in his favor upon its proceeds. St. Louis & S. F. R. Co. v. Johnston, 133 U. S. 566, 10 S. Ct. 390, 33 L. Ed. 683; Quin v. Earle (C. C.) 95 F. 728; Illinois Cent. R. Co. v. Rawlings (C. C. A. 5th) 66 F.(2d) 146. But before such trust will be enforced against a receiver, who represents creditors as well as the bank, it is indispensable that clear proof be made that the trust property or its proceeds has gone into a specific fund which has come into his hands, or into a specific identified piece of property, or has directly augmented a fund upon which the trust is to be declared. It is not sufficient to prove merely that it has gone into the general estate and has presumably increased its amount and value. Edisto Nat. Bank of Orangeburg v. Bryant (C. C. A. 4th) 72 F. (2d) 917; Santee Timber Corporation v. Elliott (C. C. A. 4th) 70 F.(2d) 179, 93 A. L. R. 874; Swan v. Children's Home Society of West Virginia (C. C. A. 4th) 67 F.(2d) 84; Lifsey v. Goodyear Tire & Rubber Co. (C. C. A. 4th) 67 F.(2d) 82; Harmer v. Rendleman (C. C. A. 4th) 64 F.(2d) 422. Here there was neither allegation nor proof tracing the proceeds of the deposits by petitioner into the hands of the receivers; and, on the authority of the cases last cited, we must deny relief to petitioner, even if we construe the prayer of his petition as sufficiently broad to ask that a trust in his favor be declared and not merely that his claim be granted preferred status.

And we do not think that under the circumstances here we should send the case back for the pleadings to be amended and further proofs adduced. Plaintiff waited

more than sixteen months after the appointment of receivers in the court below before filing his petition. More than three years have now elapsed; and, in the meantime, the liquidation of the bank's affairs has gone forward, claims have been proven, the secured debts have been discharged and a dividend has been paid to general creditors. To permit a depositor, at this late day, to raise the contention that assets which the receivers have already administered were impressed with a trust in behalf of depositors during the period of hopeless insolvency, would result in endless confusion and probably in much injustice to other persons interested in the prompt winding up of the estate.

It must be remembered that a petition to establish a trust and trace trust funds by a depositor in the situation of petitioner here is very different from the ordinary petition to have a trust declared and trust funds traced to assets in the hands of receivers. Where there has been a conversion of trust funds by the bank, or where a depositor has made his deposit so near the time of the bank's closing that the proceeds of the deposit are actually in the hands of the receiver and can be segregated without resort to legal fictions, the suit to establish the trust, as a practical matter, affects no one but petitioner and the receivers, and can go forward without disturbance to the administration of the estate. But, where the bank has been hopelessly and irretrievably insolvent over a long period, and the depositor must rely on the rule laid down in such cases as Brennan v. Tillinghast (C. C. A. 6th) 201 F. 609, 612; Empire Surety Co. v. Carroll County (C. C. A. 8th) 194 F. 593, 605, and Schumacher v. Harriett (C. C. A. 4th) 52 F.(2d) 817, 82 A. L. R. 1, to trace the trust funds, i. e., on the presumption that the bank respected the trust and preserved the trust fund, making payments in the meantime from other moneys (obviously a pure fiction in the case of a constructive trust), it is clear that other depositors as to deposits made during this period are entitled in equity to the same relief as petitioner, and in granting relief the court should see that their rights are protected. In such cases, therefore, the establishment of a trust in favor of depositors on the ground of hopeless and irretrievable insolvency would affect a large part of the obligations to depositors and probably all of the cash assets passing into the hands of the receivers; and the court should not entertain a petition asking such relief unless

petitioner has acted promptly on learning of the bank's insolvency and before matters have progressed to the point that relief cannot be afforded without injustice to other persons interested in the administration of the estate. Such a case is peculiarly one for the application of the maxim, "vigilantibus non dormientibus aequitas subvenit." What delay would constitute laches barring a depositor from the right to insist on such relief under different circumstances we need not here decide. Certainly he should not be permitted to amend his petition and ask such relief for the first time after three years have elapsed and so much has been done towards the liquidation of the estate and the establishment of the rights of the parties interested therein.

For the reasons stated, the order appealed from will be affirmed.

Affirmed.