Hynek F. Kaplan et al., Appellees, v. Frank C. Topinka et al., Defendants.
Appeal of First American National Bank & Trust Comany of Berwyn et al., Appellants.

**Gen. No. 39,135.**

Heard in the third division of this court for the first district at the December term, 1936. Opinion filed June 30, 1937. Rehearing denied July 12, 1937.

JOHN B. BERNARD, of Chicago, for appellants.

LESTER E. LEE, of Chicago, for appellees.

MR. JUSTICE HEBEL delivered the opinion of the court.

This is an appeal by the First American National Bank & Trust Company of Berwyn, a corporation, and the American State Bank of Berwyn, a corporation, and James H. Rawleigh, as receiver of the First American National Bank & Trust Company of Berwyn, a corporation, from a decree entered by the court upon overruling the exceptions to the master's report.

The court entered a decree wherein it was held that the contract entered into by and between the complainants herein and the defendants on June 2, 1930, be and the same is hereby set aside and held for naught as fraudulent and of no effect; that the promissory notes given by the said complainants to the defendants in payment of Vrzak second mortgage be and the same are set aside as fraudulent and of no effect, and that said defendants, Frank C. Topinka, individually and as president of the American State Bank of Berwyn, a corporation, and also individually and as president of the First American National Bank and Trust Company of Berwyn, a corporation, successor to American State Bank of Berwyn, a corporation; First American National Bank and Trust Company of Berwyn, a corporation, successor to American State Bank of Berwyn, a corporation, and American State Bank of Berwyn, a corporation, or either or any of them, pay to the complainants the sum of $29,796.23.

From the facts as they appear in the report of the master in chancery, to whom the cause was referred to

take evidence and report his conclusions upon the facts as well as the law, on June 2, 1930, Hynek F. Kaplan, one of the complainants, purchased for $28,697.30, a second mortgage. This mortgage, together with the notes, was executed by Frank and Rose Vrzak for $38,000, payable in monthly instalments, and reduced to $34,000 by payment on the principal prior to that date. The mortgage was dated July 19, 1928, conveyed property on 21st and Grove avenue, Berwyn, improved with a building containing 40 flats, and was subject to a prior mortgage of approximately $100,000.

It is claimed that at that time James Cech owned the mortgage and was indebted to American State Bank of Berwyn approximately $21,000, and had pledged the mortgage as security for his indebtedness. A short time prior to June 2, 1930, Cech sold complainants a house on Riverside Drive in Berwyn. At the conclusion of that sale, Cech and Kaplan went to American State Bank of Berwyn on June 2, 1930, and talked with Topinka, the president of the bank, and Kaplan bought the mortgage, which is the subject of this controversy. Cech testified that before going to the bank he told Kaplan he owned this second mortgage and offered to sell it at a discount of $3,000; that negotiations for the purchase of this mortgage were consummated several days after the first meeting with Topinka, the president of this bank. As a result of the meeting at the bank when Kaplan advised Topinka that Cech had said Kaplan could make $3,000 in the purchase of this mortgage, Topinka stated that $3,000 was not enough and the mortgage was discounted and allowed for $5,474.70. Cech objected to the allowance of such a discount, but finally agreed, for the reason that it was understood from this conversation that it was necessary to sell this mortgage because the bank examiner would not permit the bank to continue to carry it as collateral. Kaplan not having the cash to pay for the mortgage, it was

agreed by Topinka, the president of the bank, that he would loan the money to him. Thereupon Kaplan executed two notes, payable to American State Bank of Berwyn, both dated June 2, 1930, and due November 1, 1930; one note was for $5,000, and as collateral security for its payment, Kaplan deposited with the bank the Vrzak second mortgage he had just purchased; the other note was for $18,000 and as collateral security for its payment, Kaplan deposited with the bank five mortgages owned by him and his wife, for principal sums aggregating $20,800. At the time this purchase was made, Mary Kaplan, wife of Hynek F. Kaplan, was not present.

When Kaplan executed the notes he gave the bank a check for $1,697.30. The two notes and the check totaled $24,697.30, and were made and delivered in connection with Kaplan's purchase of the mortgage; the total purchase price was $28,697.30; for the balance Kaplan testified he gave the bank a $4,000 note, making a total of $28,697.30.

There is a conflict in the testimony regarding the number of notes executed by Kaplan. However, on November 12, 1930, Kaplan's indebtedness on the three notes (including the note discounted by Cech) had been reduced to $13,683, by reason of payments by the Vrzaks on their second mortgage, and by the proceeds of sale of two of the mortgages pledged as security for the $18,000 note of Kaplan. On November 12, 1930, Kaplan executed a renewal note to the American State Bank of Berwyn for $13,683, and pledged as security for its payment the Vrzak second mortgage and the three remaining mortgages, originally pledged to secure the $18,000 note. After making the renewal note and before March 3, 1931, the bank collected three payments on the Vrzak second mortgage, which were credited on Kaplan's note, and his indebtedness reduced to $12,700. On March 3, 1931, Kaplan executed

a renewal note for $12,700, and pledged the same collateral as security for its payment that he pledged for the note of November 12, 1930. The bank subsequently sold the remaining first mortgages, and applied the proceeds on Kaplan's note, leaving an unpaid balance on his note of $1,859.25 as of November 28, 1931.

The controversy in this case is upon the question of whether fraudulent representations were made to Kaplan at the time he purchased the second mortgage, and because of the relationship between him and Topinka, the president of the American State Bank of Berwyn, he relied on the representations made to him as being true and purchased the second mortgage. From Kaplan's testimony it appears that when he bought the second mortgage Topinka told him everything was paid up to date. This was denied by Topinka, but he stated that he showed Kaplan the mortgage on which the payments were indorsed, and showed him how the payments were made; told him that the mortgage called for a little larger payment than they were paying, but that was the arrangement with Mr. Cech. On the other hand, from Kaplan's testimony Topinka showed the mortgage and a card record of payments; that he did not examine the mortgage; that he just saw ''how they mark the payments''; and that the Vrzaks were making payments on the second mortgage every month, but that he was unable to tell how much; that interest and payments were made, and that Kaplan relied upon the representations made by Topinka that there was an income from the building of $2,400 a month. This is denied by Topinka, but from his testimony it appears that he told Kaplan the rent from the building was approximately $24,000 a year. Kaplan was advised by Topinka regarding the building, where it was located, and Topinka indicated by pointing from the bank building what building they were talking about.

From the record it also appears that Kaplan had had some business experience; had purchased a number of

first mortgages, but never any second mortgages; that he knew the mortgage in question was a second mortgage; also that a first mortgage is prior to a second mortgage.

It further appears from Kaplan's testimony that Topinka said he guaranteed the mortgage and the bank guarantees the mortgage. This is denied by Topinka.

In November, 1930, Vrzaks were in arrears in their payments and they told Kaplan they would not pay the interest and instalment of principal then due on the first mortgage, unless Kaplan would grant an extension of three years of the second mortgage, which matured July 19, 1931. Kaplan demanded $3,000 commission for such an extension and wanted the commission paid in cash. Vrzaks refused to pay that much commission and wanted the commission made a part of the mortgage indebtedness. Negotiations were carried on in regard to the extension and commission to be paid until June or July, 1931, when Kaplan and the Vrzaks appeared to have reached an agreement at the bank for $500 commission for a three-year extension. Mrs. Vrzak later advised Kaplan she would pay out no more money on the building, and it appears from Kaplan's testimony that he told Topinka he wanted his money back; that Topinka guaranteed the payment of the note; that in reply to this Topinka said he did not have the money.

At the time Kaplan purchased the second mortgage it does not appear that the First American National Bank and Trust Company of Berwyn was in existence. It was organized about December 15, 1930, at which time the American State Bank of Berwyn and other banks consolidated, and the First American National Bank and Trust Company of Berwyn was organized to effect such consolidation. Since this suit was instituted, James H. Rawleigh was appointed receiver of the First American National Bank and Trust Company of Berwyn.

The first point raised by the appellants is that the American State Bank of Berwyn had no power to guarantee the second mortgage or agree to repurchase it from the complainants, and they call our attention to that part of the decree wherein the chancellor found that Topinka stated that the bank guaranteed said second mortgage and that he guaranteed it and would dispose of it when the complainants were in need of money.

The reply of the complainants to this contention is that they are not seeking to recover under a guaranty or an agreement to repurchase; that proof of these statements was made for the purpose of showing the length to which Frank C. Topinka was willing to go in order to foist this second mortgage upon the complainants, and that the statements made by Topinka show clearly a fiduciary relation.

The chancellor in passing upon the master's report overruled the exceptions and entered a decree containing several findings of fact. In paragraph 7, after entering a finding on the several facts involved in this litigation, the court found that: "The said Frank C. Topinka further informed complainant that he had known him for many years and that complainant knew that said defendant would not sell him a mortgage that was not a good and safe investment, and that said Bank would not take said mortgage, or loan money upon the same, unless it was good, and the said Topinka further stated that the Bank guaranteed said second mortgage and that he guaranteed it, and that he would dispose of said mortgage when said complainant was in need of money."

And in paragraph 9, as a part of its finding, the court found: ". . .; that the said Frank C. Topinka at that time assured the complainants that said second mortgage was a good and safe investment and that it was made at the Bank and the Bank guaranteed it and

he guaranteed it; that the payments were being made regularly every month by the said Frank Vrzak and Rose Vrzak, his wife, and everything had been paid to date, and any time they needed money that he would purchase the mortgage back from them.''

The decree further finds that: ''The statements and representations made by the said Frank C. Topinka to the said Hynek F. Kaplan, as set forth in findings herein '6' and '7' respectively were false; . . .''

And further that: ''The representations and statements made by the said Topinka to the said Hynek F. Kaplan and Mary Kaplan, as set forth in finding 9 of this decree, were false and were known to be false at that time by the said Topinka and were made for the purpose of deceiving said complainants.''

In the discussion of this subject it appears that the court considered the evidence of guaranty made by Topinka guaranteeing the mortgage on behalf of the bank and that this evidence had an important bearing on the conclusion upon these findings of the court that the contract entered into by and between the complainants herein and the defendants, or either of them, on June 2, 1930, be set aside and held for naught as fraudulent and of no effect.

The answer of the American State Bank of Berwyn denies that Frank C. Topinka was authorized to make representations or guarantees on behalf of the defendant to the complainants, and denies that the complainants are entitled to the relief prayed for. Therefore, the issue is as to whether or not the guaranty made by Topinka would be binding upon this defendant and subject the American State Bank of Berwyn and its successor, The First American National Bank and Trust Company of Berwyn to a liability upon this guaranty alleged to have been made by Frank C. Topinka, who was one of the officers of this Bank.

The question of liability of a bank has been passed upon by the Supreme Court in *Knass v. Madison & Kedzie State Bank*, 354 Ill. 554, wherein the court said:

"Under the established law of this State the defense of *ultra vires* is available to the old bank when sued on a void agreement. It is said, however, that the complainants performed and executed their part of the agreement, and that it would not be good faith to permit the bank now to refuse. The same question was raised in *Steele v. Fraternal Tribunes, supra* (215 Ill. 190), where this court said: 'A contract of a corporation which is *ultra vires* in the proper sense of that term—that is to say, outside the object of its creation as defined by the laws of its organization, and therefore beyond the powers conferred upon it by the legislature—is not only voidable but wholly void and of no legal effect. The objection to the contract here is not merely that the corporation ought not to have made it but that it could not lawfully make it. The contract could not be ratified by either party because it could not have been authorized by either. No performance by the parties could give the unlawful contract validity or become the foundation of any right of action upon it. . . . But when the contract is beyond the powers conferred upon it by existing laws, neither the corporation nor the other party to the contract can be estopped, by asserting to it or by acting upon it, to show that it was prohibited by those laws.' " And then as to the question of notice, the court further quoted from *Steele v. Fraternal Tribunes, supra,* as follows: " 'The powers delegated by the State to corporations are matters of public law, of which no one can plead ignorance. A party dealing with a corporation having limited and delegated powers is chargeable with notice of those powers and their limitations and cannot plead his ignorance of their existence. . . .' " The court in the same opinion after discussing

contracts of the character before this court, said: "It seems clear, however, that payment or assumption of or guaranteeing to pay bonds of the character here involved is of the gist of the prohibition of this act applicable in any case where by any such contracted liability the deposits or the trust funds of the bank could become jeopardized or impaired. The act for the protection of bank depositors evidences an intention on the part of the legislature to declare contracts of the character before us void as against the public policy of the State."

In the case of *People ex rel. Barrett v. First State Bank & Trust Co. of Canton,* 364 Ill. 294, which was an action brought by a depositor whose claim was based upon two contracts entered into between him and the bank while it was being operated, by which he purchased from the bank certain securities owned by it on the promise of the latter to repurchase the same at a fixed price on his demand, or in any event, not later than January 1, 1935, which contracts were authorized by the directors of the bank, and thereafter the bank was closed under the general moratorium of March 3, 1933, and was not reopened, and a receiver was appointed with whom appellant filed his claim and made demand that he carry out the contracts of the bank to repurchase these securities, the court said:

"That these contracts come directly within section 4 of the act referred to seems clear. This court in *Knass v. Madison and Kedzie State Bank,* 354 Ill. 554, held such contracts invalid as against public policy and beyond the corporate powers of the bank to perform. . . . Nor is appellant entitled to recover notwithstanding the invalidity of his contract. He purchased the securities, took them into his possession and later sold them. The bank's contract was invalid, and no claim can now arise against depositors based on a void contract."

Therefore, it will be seen from the facts as they appear in the record that the chancellor in the instant case took into consideration the guaranties made by Topinka as president of the bank, by which he guaranteed the payment of these notes by the bank, or to produce the money when Kaplan desired it, and reached the conclusion that a fraud had been perpetrated upon the complainants and they were entitled to recover judgment, not alone against Topinka, one of the defendants, but as against the American State Bank of Berwyn and its successor, the First National Bank and Trust Company of Berwyn, in the sum of $29,796.23, together with interest at the rate of five per cent per annum from the date of the entry of this decree.

The court found that the guaranty agreement made for the banks in question was fraudulent, and therefore the complainants could recover from the defendant banks. The court overlooked the law announced by the Supreme Court in *Knass v. Madison and Kedzie State Bank, supra,* where the court quoted from *Steele v. Fraternal Tribunes,* 215 Ill. 190, as follows: " ' . . . A party dealing with a corporation having limited and delegated powers is chargeable with notice of those powers and their limitations and cannot plead his ignorance of their existence. . . .' "

From the announcement made by the Supreme Court, the complainants cannot plead ignorance. By dealing with the bank they are chargeable with notice of limited powers delegated by the State to the bank. Therefore, these complainants could not rely on the guaranty in question, and being chargeable with knowledge that a guaranty such as was made by Topinka for the bank was beyond the powers granted by law to the bank and wholly void, such guaranty contract cannot be ratified.

It follows from what we have said in this opinion that the decree in this case must be reversed and the cause remanded.

*Reversed and remanded.*

Denis E. Sullivan, P. J., and Hall, J., concur.