**CARNEGIE–ILLINOIS STEEL CORPORATION v. BERGER.**

**No. 6954.**

Circuit Court of Appeals, Third Circuit.
June 30, 1939.

As Amended Aug. 9, 1939.

H. Eastman Hackney, F. T. Ikeler, John C. Bane, Jr., and Reed, Smith, Shaw & McClay, all of Pittsburgh, Pa., for appellant.

Charles Alvin Jones, of Pittsburgh, Pa., George H. McWherter, of Greensburg, Pa., and Arthur McKean, of New Kensington, Pa., for appellee.

Before BIGGS, CLARK, and BUFFINGTON, Circuit Judges.

BIGGS, Circuit Judge.

A bill of complaint was filed by the appellant in the court below seeking to have certain sums in its account in the First National Bank & Trust Company of Monessen, an insolvent national bank, declared to be subject to a trust in its favor, either by express agreement or ex maleficio, or, payable as a preferred claim. Specifically, the pleading shows that the appellant maintained a payroll account at the Bank and that upon October 13, 1931, its balance was $21,723.10, $20,000 of which had been deposited on October 10, 1931,

three days before the Bank suspended business by resolution of its board of directors.[1] The appellant claims that the appellee, the receiver appointed by the Comptroller of the Currency for the Bank, should be compelled to pay to the appellant the entire balance due it. This assertion is based upon the contention that the deposits of the appellant were made pursuant to a contract entered into between the appellant and the Bank dated January 24, 1905. If this contention be not tenable, then the appellant asserts that the officers and directors of the Bank committed a fraud upon the appellant when the Bank accepted the deposit of $20,000 upon October 10, 1931, because they knew or should have known that the Bank was hopelessly insolvent and that therefore this sum is recoverable by it. In each instance the appellant indicates its willingness to off-set against the sums claimed by it amounts received by way of the payment of dividends, as will appear hereafter.

An answer was filed to the bill by the appellee, denying the appellant's claim to a preferential payment. By an amendment to the answer, the appellee alleges that the acceptance by the appellant of dividends paid to general creditors and delay in asserting its claimed preference estops the appellant from recovery. The appellee filed a motion to dismiss the bill upon the ground of laches. The court below granted the motion. The appellant then filed a petition for reconsideration and for leave to amend. The court below required the appellant to suggest its proposed amendment by motion. After consideration, the District Judge denied the motion and dismissed the bill of complaint. This is the order appealed from.

## Was the Appellant's Balance the Subject of an Express Trust?

We assume that if the relationship of trustee and cestui que trust existed by express agreement between the appellee and the appellant, this relationship would persist in the face of the liquidation proceedings if there was a res in existence to which the trust would attach. The agreement of January 24, 1905, between the appellant and the Bank, however, is not made part of the bill. From the pleading it appears simply that the appellant deposited with the Bank funds or credits to meet the payroll at its plant. The Bank paid the checks issued by the appellant upon presentation in ordinary course. The $20,000 deposit made by the appellant upon October 10, 1931, was intended, with the balance of $1,723.10 already in the account, to meet the payroll coming due upon October 15, 1931.

There are no allegations that would lead to a conclusion that the appellant's balance was of the nature of a trust fund or res. The deposits made by the appellant were not in any wise segregated or separated from the general assets or credits of the Bank. The appellant's contention that the agreement of January, 1905, had the effect of creating a status for its deposits not as sums of money or credits " * * but (as) some other kind of personal property, perhaps a chest of table silverware, left for safe-keeping in the Bank's vault * * *" is wholly untenable. While it is true that the appellant's account was an agency account and the appellant paid the Bank fees based upon the number of paychecks it cashed, it is entirely apparent that the Bank received the deposits of the appellant upon substantially the same basis as those of other depositors. See Santee Timber Corporation v. Elliott, 4 Cir., 70 F.2d 179, 182, 93 A.L.R. 874, and the cases cited under heading (8) of that opinion.

We must conclude that here was no trust by express agreement and that in fact there existed no res upon which such a trust could be predicated.

## Was a Trust Ex Maleficio Created in so far as the $20,000 Deposit is Concerned?

The Comptroller of the Currency took charge of the Bank's affairs upon October 13, 1931. A receiver was appointed soon thereafter. He took possession of the assets of the Bank and entered upon its liquidation. The claims of creditors were presented promptly to the receiver. The appellant's original claim was filed with him upon January 12, 1932 as a general claim upon the balance due upon its open account. The claim was allowed by the Comptroller upon April 29, 1932. Upon June 3, 1932, a first dividend was paid by the receiver to general creditors. The appellant received and accepted its share of this dividend. Thereafter, upon August 17, 1932, ten months after the closing of the

---

[1] It is clear that the allegation of the bill of complaint that the Bank suspended business in accordance with a resolution of its board of directors upon October 10, 1931, is erroneous.

Bank and eight months after the appellant had filed its general claim, the appellant filed with the receiver its first claim for preference based upon the theory of an express trust arising by reason of the agreement of January, 1905. The Comptroller disallowed this claim for preference upon May 22, 1933.

Upon June 6, 1933, a year after the first dividend to general creditors, the appellant filed with the receiver its second claim for preference, advancing for the first time the theory of a trust ex maleficio basing it upon the ground set forth in the first paragraph of this opinion. This claim was promptly disallowed by the Comptroller and the appellant was notified of the disallowance upon June 28, 1933.

The appellant then received and accepted two additional dividends; one being paid upon September 30, 1933; the other, upon December 10, 1934. The three dividends thus received by the appellant totalled 30% of its claim. Thereafter, and upon June 3, 1935, nearly two years after the rejection of its last claim for preferential payment, the appellant filed its bill of complaint in the suit at bar. A fourth dividend of 5% was paid to the general creditors of the Bank on December 20, 1937, between the time of the filing of the original bill and the filing of its motion to amend its original bill. The appellant also accepted this dividend.

Assuming, as the pleading alleges, that the officers and directors of the Bank were guilty of fraud in that they received the deposit of $20,000 made by the appellant upon October 10, 1931, knowing that the Bank was hopelessly and irretrievably insolvent, can it be said that a trust ex maleficio was thereby created requiring that sum to be paid to the appellant as a preference? Or, if we go one step further and assume the existence of such a trust, was the court below correct in holding that the appellant had waived its rights by reason of its laches and is foreclosed from asserting a preference?

■ We must assume that the officers of the Bank knew of its insolvent condition and received the appellant's last deposit in the light of such knowledge. We think that the law may be stated as follows. If a bank accepts a deposit with knowledge upon the part of its officers and directors that it is hopelessly and irretrievably insolvent, there is a fraud perpetrated upon the depositor. The depositor may thereupon rescind the contract of deposit and recover the sum paid in or ask that a constructive trust be declared in his favor upon its proceeds. Poole v. Elliott, 4 Cir., 76 F.2d 772, 774; St. Louis & S. F. R. Co. v. Johnston, 133 U.S. 566, 10 S.Ct. 390, 33 L.Ed. 683; Quin v. Earle, C.C., 95 F.2d 728; Illinois Cent. R. Co. v. Rawlings, 5 Cir., 66 F.2d 146. If, upon the other hand, the depositor does not rescind his contract but treats it as if it were in force and of effect he must be deemed to have ratified it. Having ratified it, he must collect the amount of his claim upon the same basis as all other general creditors.

■ The fundamental question presented for our determination in the case at bar is therefore whether or not the appellant, having pursued the course of conduct which we have described, three and one half years after the insolvency of the Bank and nearly two years after the rejection of its latest claim for preference may proceed to elect a new remedy, rescind its contract of deposit and effect a constructive trust upon the general estate of the insolvent Bank. We hold that the appellant by its course of conduct has lost its right to elect a different remedy than that which it originally pursued and may not force upon the receiver of the Bank a rescission of the contract of deposit or cause a constructive trust to be declared upon the credit which it that day placed in the Bank.

We entertain no doubt but that the appellant has been guilty of laches in asserting its present position. If the appellant was a cestui que trust of the Bank in respect to any fund or credit placed therein under the 1905 agreement, it was aware of that fact when it filed its general claim upon January 12, 1932. It waited eight months after filing its general claim before asserting any preference whatsoever. It waited nine months more before asserting any claim for preference resulting from a trust arising ex maleficio. The appellant delayed almost two years after the rejection by the receiver of that claim for preference before filing its bill of complaint. No adequate reason is stated by the appellant as to why such a period of time was permitted to elapse before it asserted in a court of equity a claim based upon fraud. Three and a half years after the seizure of the Bank by the Comptroller

488

and upon the receipt of three dividends as a general creditor totalling 30 per centum of its claims, the appellant for the first time came into a court of equity. Nor is this all.

As the District Judge pointed out, the appellant did not allege any lack of knowledge of the alleged fraud in its bill of complaint. It did this for the first time in the amendments to the bill of complaint which it sought to file upon April 27, 1938. By the time this was done, it had received its fourth dividend. Its allegations of lack of knowledge of the fraud of the Bank were not asserted until a date over six years after the closing of the Bank.

The appellant may not now rescind its contract of deposit or gain the advantage of the doctrine of constructive trust. There is little in the appellant's position which appeals to a court of equity.

■ Upon the other hand the appellee is engaged in the liquidation of a banking institution. In fulfilling that function he is required, not only in the interests of individual depositors and creditors, but as a matter of public concern, to proceed with that liquidation promptly and in accordance with law. To permit the appellant to change its position now would work havoc in the orderly administration of the affairs of the Bank. As was said in Poole v. Elliott, supra, at pages 774, 775, " * * we do not think that under the circumstances here we should send the case back for the pleadings to be amended and further proofs adduced. Plaintiff waited more than sixteen months after the appointment of receivers in the court below before filing his petition. More than three years have now elapsed; and, in the meantime, the liquidation of the bank's affairs has gone forward, claims have been proven, the secured debts have been discharged and a dividend has been paid to general creditors. To permit a depositor, at this late day, to raise the contention that assets which the receivers have already administered were impressed with a trust in behalf of depositors during the period of hopeless insolvency, would result in endless confusion and probably in much injustice to other persons interested in the prompt winding up of the estate." See also Standard Oil Co. v. Elliott, 4 Cir., 80 F.2d 158, at pages 160 and 161.

The decree of the court below is affirmed.