### KAPLAN et al. v. JOSEPH et al.

### No. 7773.

Circuit Court of Appeals, Seventh Circuit.

Feb. 4, 1942.

Leon A. Semerak, of Chicago, Ill., for appellants.

Daniel J. Lamont, of Chicago, Ill., for appellees.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

This is an appeal from an order, entered June 17, 1941, allowing defendants' motion for a summary judgment, and dismissing plaintiffs' amended and supplemental complaint purporting to state a cause of action entitling plaintiffs to a preferred claim against defendants' trust. The court, in its order appealed from, found that the plaintiffs were guilty of gross laches in the presentation of their claim and that it was barred. The court also denied leave to file an amended complaint praying in the alternative that plaintiffs' claim be allowed as a general claim.

The defendants, in their brief, state the contested issues thus:

(1) Is the preferred claim against the First American National Bank of Berwyn sought for the first time by plaintiffs in their amended and supplemental complaint barred by laches.

(2) If so, is the general claim asserted by the plaintiffs likewise barred by laches.

As we understand the order of the court below and the position of the defendants, both in that court and here, there is no issue involved other than that of laches. In other words, the sufficiency of the amended and supplemental complaint to state a cause of action was not raised or decided. Consequently there is no such issue here.

Plaintiffs, on July 14, 1931, filed their complaint in the Superior Court of Cook County, Illinois, against Frank C. Topinka, individually and as President of the American State Bank of Berwyn and the First American National Bank and Trust Company of Berwyn, as successor to the American State Bank, American State Bank of Berwyn, a Corporation, and the First American National Bank and Trust Company of Berwyn, a Corporation. The complaint discloses that in the month of December, 1930, the American State Bank, with other institutions, combined to form the First American National Bank and Trust Company, and that Topinka, upon the consolidation, became President of the latter.

The complaint is lengthy and, in our view of the situation, it is not material to state its allegations in detail. In brief, it alleges that plaintiffs, on June 2, 1930, purchased from Topinka, as President of the American State Bank, a second real estate mortgage for the sum of $28,697.30, and as consideration therefor, executed and delivered to the bank two promissory notes, one in the amount of $18,000, and the other in the amount of $5,000. The balance of the purchase price, $5,697.30, was paid to the bank in cash. As collateral for the $18,000 note, there was delivered to the bank, notes payable to plaintiffs secured by first mortgage liens on real estate having a market value of $20,800. As collateral for the $5,000 note, the note and mortgage which plaintiffs had purchased were left with the bank. Subsequently the amount owing on such collateral notes was reduced to approximately $12,000.

Facts relied upon to show a confidential relationship between plaintiffs and Topinka were alleged, as well as numerous false and fraudulent representations on the part of Topinka, relied upon by plaintiffs, which induced the purchase of the note and mortgage. It was alleged that plaintiffs were ignorant of the nature of the transaction and that they were never permitted to see or have in their possession the note and mortgage which they purchased, which, as

stated, were left in the possession of the bank as collateral. It was also alleged that Topinka, on behalf of the bank, guaranteed that the note purchased by plaintiffs was good and that the bank stood back of it. It was further alleged that in the month of May, 1931, plaintiffs discovered they had been deceived in the purchase of the note and mortgage, so induced by fraud and deceit, and that they, for the first time, became aware that the note and mortgage were worthless and not as represented; that they then and there demanded of the bank that it take back such note and mortgage and return the notes, securities and cash received by the bank as consideration therefor. This the bank refused to do.

The prayer for relief generally was to the effect that all transactions between plaintiffs and the defendants be set aside, that defendants be required to take back the note and mortgage which plaintiffs had purchased, return to plaintiffs their notes, that defendants account for all moneys which had been received on account of said transactions, that defendants be restrained from disposing of any of plaintiffs' collateral, and that plaintiffs have such other and further relief in the premises as equity may require and to the court shall seem meet.

The First American National Bank and Trust Company of Berwyn was closed by the order of the Comptroller of the Currency of the United States and a Receiver was appointed who filed his appearance and became a party defendant. Topinka is not a party to the instant appeal.

On November 9, 1931, the court overruled defendants' demurrer to the complaint, and on November 16, 1931, an answer was filed. The cause was referred to a Master whose report was approved by the court and a decree entered April 21, 1936. The court sustained substantially all the charges made in the complaint as to the fraud and misrepresentations practiced by Topinka and the bank in inducing plaintiffs to enter into the alleged transaction. The court further found that on July 13, 1931, certain of the collateral held by the bank was purchased by it at private sale; that on July 14, 1931, certain other collateral was purchased by the bank, including plaintiffs' note and second mortgage. As to the latter, it was found that a balance of $32,400 was due and that it was purchased by the bank for the sum of $2500. It was found that the collateral security

placed with the bank by plaintiffs had been disposed of and could not be returned in kind, and that there was due and owing to the plaintiffs the sum of $29,796.23. The matters involved in the transaction between plaintiffs and the defendants were set aside as fraudulent and of no effect, and the defendants ordered to pay to the plaintiffs the amount found due.

July 3, 1936, the defendants took an appeal from said decree to the Appellate Court of Illinois, First District, which, on June 30, 1937, reversed and remanded the cause to the Superior Court of Cook County "for such other and further proceedings as to law and justice shall appertain." Kaplan v. Topinka, 291 Ill.App. 222, 9 N.E. 2d 470. The opinion does not seem material to the question now before us except it may be pertinent to point out the cause was reversed for the reason that the court below, in its decree, took into consideration the statements made by Topinka, as President of the bank, in which he guaranteed payment by the bank. This guarantee was held to be ultra vires. The mandate of the Appellate Court was filed in the Superior Court of Cook County, January 28, 1939, and on February 24, 1941, upon application of plaintiffs' attorney, and after notice to the defendants as required by the Illinois Statute, the court ordered that the cause be redocketed upon the Chancery Calendar.

On the same date plaintiffs' amended and supplemental complaint was filed (the complaint here in controversy). The first fourteen paragraphs thereof contain practically, and perhaps exactly, the same allegations as contained in the original complaint, and as found in the court's decree, except that all allegations as to guaranty by the bank were omitted. This amended complaint differed from the original in its charging part only by the addition of Paragraph 15 which alleged that all the notes and securities delivered to the bank had been sold and that the proceeds thereof were held by the defendant receiver. The relief sought by plaintiffs was that the contract of June 2, 1930, be set aside as fraudulent and of no effect, that the notes given by plaintiffs to the defendants in payment of said second mortgage be set aside as fraudulent and of no effect, that the Receiver be decreed to hold in constructive trust for the use of the said plaintiffs the sum of $22,497.30, together with interest thereon at the rate of five per cent from June 2, 1930, and that the Receiver be de-

creed to pay as a preferred claim, such amount to the plaintiffs in the course of the administration of the receivership.

On March 25, 1941, upon application of the Receiver, an order was entered in the State Court transferring the cause to the District Court of the United States. On April 9, 1941, the Receiver filed his motion for summary judgment and affidavit in support thereof. The affidavit recited that notice was given to all persons who might have claims against the bank to present the same to the Receiver within three months from August 8, 1932; that on July 1, 1935, a dividend of 12½% was paid to the creditors of said bank; that on January 17, 1941, a final sale of the remaining assets of said bank was approved by the court; that the only reason a final dividend had not been paid to the creditors was the pendency of this cause, and that plaintiffs had made no claim for preference prior to the filing of their amended and supplemental complaint on February 24, 1941.

April 24, 1941, plaintiffs filed their affidavit of merits in defense of the motion for summary judgment. The affidavit of plaintiff Hynek F. Kaplan stated, among other things, that in September, 1937, he learned for the first time of the reversal by the Appellate Court of Illinois, that he thereupon went to the office of his attorney who was ill and unable to perform his duties as an attorney, that up to January, 1941, he made numerous visits to his attorney's office, whose illness continued; that he was informed his rights in the matter would be preserved, that as soon as his attorney was able, further action would be taken in the matter, and that this situation continued until February, 1941, when he engaged his present attorney. As stated heretofore, the court sustained defendants' motion for a summary judgment and entered the order appealed from.

█ In support of their claim of laches, defendants argue that plaintiffs' claim for preference was asserted for the first time in their amended and supplemental complaint, and that the inexcusable delay in the prosecution of their suit bars a general claim for the same reason. It must be conceded, we think, the fact that the original complaint was filed July 14, 1931, and the amended and supplemental complaint was not filed until February 24, 1941, almost ten years later, on its face discloses a situation favorable to defendants' contention. An examination of the authorities, however, relied upon by the respective parties, discloses that the time element alone is not the determining factor.

Such defense was sustained in Carnegie-Illinois Steel Corp. v. Berger, 3 Cir., 105 F.2d 485, after a delay of 3½ years in asserting a claim for preference. In that case, however, the claimant, as a depositor, asserted at such late date that the bank accepted his deposit knowing of its insolvency. In the meantime, claimant's general claim had been allowed and three dividend payments made thereon. Under such circumstances, he was held to have ratified the allowance of his general claim, and that his assertion of a preferred claim was subsequently barred. The court also stressed the injustice which would result to other depositors in the same class; that is, those whose deposits had been accepted during the period of the bank's insolvency.

In Standard Oil Company of New Jersey v. Elliott, 4 Cir., 80 F.2d 158, the court held the claimant chargeable with laches because of a delay of seven months in asserting a claim for preference. This is another case where the claim was predicated upon the acceptance of deposits during insolvency and it appears the court's opinion is predicated largely upon the harm which would result to other depositors in the same situation whose claims were being liquidated as general.

Poole v. Elliott, 4 Cir., 76 F.2d 772 is also a suit by a depositor for a preferred claim, and a sixteen-month delay in asserting such claim was held to bar it.

On the other hand, in Queenan v. Mays, 10 Cir., 90 F.2d 525, a delay of six years in asserting a preferred claim was held not barred. In this case the claim was predicated upon the alleged fraudulent conduct of the bank and its officials in the handling and sale of certain bonds deposited with it for safe keeping.

█ It will thus be observed that the question of laches is usually dependent upon the circumstances of each case. We think also that the cases, wherein a preference was sought on account of the acceptance of a deposit during the bank's insolvency, have little relevancy to a situation where the complaint is predicated upon actual fraud of the bank and its officials in obtaining the claimant's property as in the instant case. It is also to be kept in mind that the instant suit was commenced while the bank was a going concern, continued

against it thereafter, and that the Receiver, of his own volition, intervened and became a party defendant. Under such circumstances, Section 193, Title 12 U.S.C.A., directing the Comptroller to give notice for the filing of claims, has no application. Schulenberg v. Norton, 8 Cir., 49 F.2d 578, 580, Queenan v. Mays, supra, 90 F.2d page 530. It also has been settled that a suit instituted against a National Bank does not abate upon its suspension, but that the court has jurisdiction to determine the rights of the claimant and that a judgment against the bank is binding upon the Receiver. Connolly v. First National Bank-Detroit, 6 Cir., 86 F.2d 683, 686; Earle v. Pennsylvania, 178 U.S. 449, 454, 20 S.Ct. 915, 44 L.Ed. 1146.

■■ In support of the contention that a preferred claim was asserted, for the first time, in the amended and supplemental complaint, defendants rely upon the decree entered in the State Court which they say provided merely for the recovery of a money judgment. We are of the view that such reliance is misplaced. After reversal this decree was no longer of any force or effect. The parties were in precisely the same situation as though no decree had been entered. Henderson v. Harness, 184 Ill. 520, 522, 56 N.E. 786. We must, therefore, look to the original bill rather than the vacated decree in determining whether a new cause of action was stated in the amended and supplemental complaint.

■ This amended complaint contains all the allegations of fraud by which the defendant bank is alleged to have obtained plaintiffs' property. There is omitted only the allegation concerning the guarantees made by the bank's president so as to meet the decision of the Appellate Court that such guarantees were ultra vires. The amended complaint also contained certain additional allegations relevant to the changed situation occasioned by the sale of the property by the bank to itself, which it is alleged to have fraudulently obtained from plaintiffs, and that the proceeds therefrom are held by the defendants in constructive trust for the use and benefit of plaintiffs. It has been held, however, that a new cause of action is not stated in an amended complaint by setting up new matter or changed circumstances arising after the filing of the original bill. Rio Grande Dam & Irr. Co. v. United States, 215 U.S. 266, 275, 30 S.Ct. 97, 54 L.Ed. 190; Jenkins v. International Bank of Chi-

cago, 127 U.S. 484, 8 S.Ct. 1196, 32 L.Ed. 189.

■■ True, there is no specific allegation in the original complaint that plaintiffs are preferred claimants, or that the proceeds of the converted property were held by the defendants in constructive trust. It must be remembered, however, that the property had not been converted by the bank at that time. Furthermore, we do not think defendants' argument that only a money judgment was sought in the original suit is tenable. What plaintiffs were seeking at the time was a return of the property which they alleged had been fraudulently obtained. The accounting which was requested was merely incidental thereto and had reference only to the cash which the bank had received by reason of the transaction. No different proof was required to sustain the allegations of the amended and supplemental complaint other than those having to do with the situation, altered subsequently to the filing of the original complaint. It is true that the amended complaint designated plaintiff's cause of action as a preferred claim, but we are of the view that the nature of a cause of action is not to be determined by its label. We are satisfied that no different cause of action was stated in the amended complaint.

■ But whether this be correct or not, it is further argued that the plaintiffs are barred by laches, even as to a general claim, for a lack of diligence in prosecuting their suit. The chief criticism in this respect is the delay in the filing of the amended and supplemental complaint after reversal by the Illinois Appellate Court. As already pointed out, the Appellate Court reversed the case June 30, 1937, the mandate of that court was filed in the Superior Court of Cook County, January 28, 1939, and the amended and supplemental complaint was filed February 24, 1941. Thus, it will be observed that something less than two years intervened between reversal and the filing of the mandate, and again almost two years between the filing of the latter and the amended and supplemental complaint. Under ordinary circumstances, this delay, we think, would be such as to bar the action. As a reason for this delay, however, one of the plaintiffs stated in an affidavit that he did not learn of the reversal by the Appellate Court until September, 1937, and that on numerous occasions thereafter he went to the office of his attorney and was informed that he was ill and unable to per-

form his duties, but that his rights were being preserved; that this situation continued until early in 1941, when he employed another attorney. That plaintiffs' attorney was ill is not disputed. The record also discloses that plaintiffs were ignorant of their rights, and we do not believe they should be barred under the circumstances thus shown. Furthermore, we think the defendants must share some of the responsibility for this delay. As we understand the practice, a mandate from the Illinois Appellate Court does not issue as a matter of course. Either party may procure the mandate, file it in the trial court, and have the cause reinstated. The statute, as applicable in the instant case, provided that no new trial could be had unless the mandate was filed in the trial court within two years after final determination by the reviewing court. Illinois Revised Statute, 1941, Chap. 110, Par. 212. There was no reason, so far as we know, why defendants could not have procured the mandate, filed it in the lower court, had the cause reinstated and tried or dismissed. Likewise, after the mandate was filed, a rule, no doubt, could have been had which would have brought the matter to a head. Apparently the defendants, during this four-year period, were not so much concerned with the expeditious disposal of this litigation and a final distribution of the trust assets, as they are at the present time.

Lastly, it is argued that the liquidation of the bank's affairs has been completed, and to permit plaintiffs to prosecute their suit would be an injury to the creditors. We think there is not sufficient merit in this contention to justify the barring of plaintiffs' cause. There will, of course, be the additional expense of defending against this suit, but we see no reason why it will cost more now than it would have cost had the matter been promptly retried after reversal by the Appellate Court. If plaintiffs are successful in the instant litigation, it will reduce the assets available for distribution in no manner different than if they had been successful at some prior time.

In conclusion, we reiterate that the only issue before us, and the only one we decide, is that plaintiffs' suit was not barred by laches, and that the amended and supplemental complaint did not state a cause of action different from that in the original complaint. The question as to whether plaintiffs have stated a cause of action, and, if so, whether they have stated a cause that entitles them to the allowance of a pre-

ferred or general claim is left for the consideration of the court below.

The order appealed from is reversed with directions to proceed in accordance with the views herein expressed.